Mr. Justice WAYNE
 

 delivered tbe opinion of tbe court.
 

 We regard this as a. suit for a wife brought on tbe equity. side of tbe District Court of tbe United States for tbe district of Wisconsin, by hér next friend, George Cronkhite, a citizen of tbe State of New York, against Hiram Barber, a citizen of tbe State of Wisconsin, to give the same validity to a judgment
 
 *584
 
 in that State which it has in the State of New York against the defendant for the payment of alimony to his wife, who has been divorced from him
 
 a mensa et thoro,
 
 with an allowance of alimony by a court, which had, when the décree was made, jurisdiction over the parties and the subject-matter.
 

 We shall not have occasion to comment upon the relations of husband and wifé in her uninterrupted coverture-, nor will we discuss the general rights, obligations, or disabilities, of-either, when they have been separated by a divorce
 
 a mensa et thoro.
 

 Our first remark is — and we wish it to be remembered — that this is not a suit asking the court for the allowance of alimony. That has been done by a court of competent jurisdiction. The court in Wisconsin was asked to interfere to prevent that decree from being defeated by fraud.
 

 We disclaim altogether any jurisdiction in the courts of the United States upon the subject of divorce, or for the allowance of alimony, either as an original proceeding in chancery or as ah incident to divorce
 
 a vinculo,
 
 or to one from bed and board.
 

 The record raises these inquiries: Whether a wife divorced
 
 a mensa et thoro
 
 can acquire another domiciliation in a State of this Union different from that of her husband, to entitle her, by her next friend, to sue him in a court of the United States having’equity jurisdiction, to recover from him alimony due, and which he refuses to make any arrangement to pay; and whether a court of equity is not a proper tribunal for a remedy in such a case.
 

 We will first direct our attention to the circumstances of the case, and will give them from the bill and answer, and from the testimony in the record.
 

 Hiram Barber and Huldah Adeline Barber were married in the State of New York, in the year 1840, where his domicil then was, and continued to be until he left it for Wisconsin, which was soon after a decree had been given for a divorce
 
 a mensa et thoro
 
 between them, with an allowance of alimony to be paid by him. Her application for such a divorce was made by Cronkhite, her ■ next friend, in the court of chancery for
 
 *585
 
 the fourth district of the State of New York, that court having jurisdiction of the subject-matter and over the parties.
 

 The defendant appeared and resisted the application. The cause was heard on the pleadings and proofs. It resulted in a declaration by the chancellor that the defendant had been guilty of cruel and inhuman treatment of his wife, and of such conduct .towards her as to render it unsafe and improper for her'to cohabit with him; and that he had abandoned, neglected, and refused to provide for her. And it therefore decreed that the complainant and defendant be separated from bed and board forever; provided, however, that they might at any time thereafter, by their joint petition, apply to the court to have the decree modified or discharged; and that neither of the said parties shall .be at liberty to marry any other person during the lifetime of the other party. The court then referred the cause to a master, to ascertain and report what should be allowed and to be paid by the defendant, or out of his estate, to Mrs. Barber, .for her suitable support and maintenance. In pursuance of this decretal order and reference, the master made a report. The defendant filed exceptions to it. The cause was regularly brought to a hearing .upon the defendant’s exceptions. They wére overruled,'and a final decree was made in the cause. The language of the- decree is, that the exceptions are overruled, and that the report of the master is absolutely confirmed. That for the suitable support and maintenance of Mrs. Barber, there should be allowed .and paid to her by the defendant, pr out of his estate, in quarterly instalments, the annual sum of three hundred and sixty dollars in each and every year; and that as it appeared he had not given to her any support in the interval between the filing of the bill in her behalf and the rendition of the decree, that the defendant should pay to her three hundred and sixty dollars á year in quarterly payments from the 1st day of July, 1844, that being the day when the bill was filed; and it was decreed that the sum of nine hundred and sixty dollars, being the alimony retrospectively due, should be paid forthwith by the defendant, and that the complainant should have execution therefor. It was further ordered, that the permanent alimony allowed and to become due after the
 
 *586
 
 1st of March, 1847, to which day alimony is above computed, should be paid by the defendant in quarterly payments on the 1st days of March, June, September, and December, in each year during the life of Mrs. Barber;'and in case of its not being ' so paid, that the quarterly payments should bear interest as they respectively became due,, and that execution might issue therefor
 
 Mies quoties.
 
 The court then decreed that the permanent alimony allowed'to Mrs. Barber was vested in her for her own and separate use, and as her own and separate estate, with . full power to invest' the same in a trustee or trustees, as she might think proper to appoint, with the power to dispose of the same by will or otherwise,' from time to time during her life, or at. her death, or either, as she may think proper, free from-any Control, claim, or interposition of the defendant. The said decree, with a taxed bill of costs in the suit, was signed and enrolled according to the form of the statute in such cases made and provided in the State of New York..
 

 It is upon a transcript of all the papers in that suit, authenticated' as the law requires it to be done, that the' suit now before us was brought in the District Court of the United States for the district -of Wisconsin.
 

 The complainants aver in their bill that they are citizens of the State of New York, and that the defendant is a citizen of the State of Wisconsin. They then set out the proceedings of .the court in New York, divorcing Mr. and Mrs. Barber from bed and board, with especial reference to the decree and the entire record of that suit, charging the defendant with not having paid any part of the alimony adjudged to Mrs. Barber; and that there was then due to her on that account the sum of four thousand two hundred and forty-two dollars and. fifteen cents, with interest at seven per. cent., that being the legal rate in the State of New York. The rest of the bill it is not necessary to state more particularly, than that it is a recital of a suit which had been brought upon the common-law side of the District Court of the United States for the county of Milwakkee, in the Territory of Wisconsin, for the amount of alimony due by the defendant; to the declaration in which; he filed a demurrer, upon which a judgment was rendered in
 
 *587
 
 liis favor, which was afterwards affirmed in the Supreme Court of the State, for the reason that the remedy for the recovery of alimony was in a court of chancery,,and not at law. To this bill also the defendant demurred, on account of the case not being within the ordinary jurisdiction of a court of chancery, that the relief sought could only be had in the court of chancery in the State of New York, and that it ■ did not appear that the complainants had exhausted the remedy which they had in New York. This demurrer was overruled, and the defendant was ordered to answer. He did so. He admits in his answer the legality and locality of his marriage' with Mrs. Barber; the jurisdiction of the court in the divorce case; that a divorce had been decreed between them from bed and board, after contesta^ titm; and that by that decree he was subjected to the payment of alimony to the extent and in the way it is claimed in the bill he was then answering. He admits that he left the State of New York without having paid any part of it, or having made any arrangement to do so; alleging, however, that he had left real estate fin New York, upon which no proceedings had been taken to make it liable to the decree against him for alimony.' And he then goes on to state, that on the 19th day of April, 1852, he had filed his bill in the Circuit Court of the county of Dodge, in the State of Wisconsin, against Mrs. Barber, she then being his wife, to obtain a dissolution of the marriage contract between them, and that their marriage had been dissolved by a decree of that court, which is on record in the .same. And he adds, that his wife, by that decree became a
 
 feme sole;
 
 and being so, she could not sue by her next friend, and that her remedy was in a court of law. To this answer a general replication was filed. The cause was carried to a hearing upon the pleadings and proofs, and a decree was made, adjudging that five thousand nine hundred and thirty-six dollars and eighty cents is due from the defendant upon the alimony sued for, for principal and interest, to and prior to the time of filing the bill, in this cause, and that the defendant should pay it, for the sole and separate support and maintenance of’Mrs. Barber, together with the costs, to be taxed within ten days; and in default .thereof, that execution should issue for the same.
 

 
 *588
 

 ■
 
 It appears, fro.m the testimony in the cause, that the defendant left the State of New York in a short time after the decree for the divorce and for alimony had been rendered, for the purpose of placing himself beyond the jurisdiction of the court which could enforce-it, without having paid any part of the alimony due, or leaving any estate of any kind out of which it could be paid; for he gave no proof of any kind that he had real estate in the State of New York in support of that allegation in'his answer.
 

 ■ It also appears, from the record, that the defendant had made his application to the court in Wisconsin for a divorce
 
 a vinculo
 
 from Mrs. Barber, without having disclosed to that court any of the circumstances of the divorce case in New York; and that, contrary to the truth, verified by that record, he asks for the divorce on account Of his wife having wilfully abandoned him. It is not necessary for us to pass any opinion upon the legality of the decree, of upon its operation there or elsewhere to dissolve the
 
 vinculum,
 
 of the marriage between the defendant and Mrs. Barber'. It certainly has no effect to release the defendant -there and everywhere else from his liability to the decree made against him in the State of New York, upon that decree being’carried into judgment in a court of another State of this Union; or in a court .of the United States, where the defendant may be found, or where he may have acquired a new domicil different from that which he had in New York when the decree was made there against him.
 

 The questions made by the bill and the answer, and by the arguments of counsel, we will state in the form of an inquiry. They are as follows: "Whether a wife divorced
 
 a mensa et thoro
 
 may not have a domiciliation in a State ofthis Union different from that of her husband in another State, to enable her to sue him there by her next friend, in equity, in a court of the United. States, to carry into judgment a. decree which has' been, made against him for alimony by a court .having jurisdiction of the parties and the subject-matter of.divorce?
 

 In the consideration of .these questions, we must not allow" ourselves to be misled ,by. the general'rulé which'prevails in England, that a suit cannot be maintained at law by a
 
 'feme
 
 
 *589
 

 covert,
 
 and that, notwithstanding a divorce
 
 a mensa et thoro,
 
 a wife cannot sue or be' sued in a court of law; for in England she may in several cases maintain a suit in her own name as a
 
 feme sole,
 
 both at law and in equity. They are exceptions to the general rule,
 
 or privileged cases,
 
 under certain circumstances, where it cannot be presumed, from his own acts, that the husband’s control of his wife is continued, and where she has been deprived of his protection to represent with her her rights and interests in a suit at law, or in one in equity. The cases mentioned in the books where a
 
 feme covert
 
 may sue as a
 
 feme sole
 
 are: When her husband is banished, or has abjured the realm, or has been transported for felony; where the husband is an alien enemy, and his wife is domiciled in the realm; where the husband is an alien domiciled abroad, and has never been in the realm; or where he has voluntarily abandoned her, and is under a disability to return; so where the husband has deserted the wife in a foreign country, and she goes to England and maintains herself as a
 
 feme sole;
 
 where the husband, in a foreign.State, compels his wife to leave him for another political jurisdiction, and she maintains herself there as a
 
 feme sole.
 

 Cases- have been decided in Massachusetts in conformity with , the English cases. There are cases in England which have gone much further, but we do .not cite them, preferring only to mention such instances as have not been questioned by subsequent cases in England or in the United States. (See Story’s Equity Pleading, 6th edition, sec. 61, pp. 59, 60, and the cases cited in the notes.)
 

 Except in such cases, a
 
 feme covert
 
 cannot sue at law, unless it be jointly with her husband, for she is deemed to be under the protection of her husband, and a suit respecting her rights must be with the assent and co-operation of her husband. (Mitf. Equity Pl., by Jeremy, 28; Edwards on Parties in Equity, 144, 153; Calvert on Parties, ch. 3, sec. 21, pp. 265, 274; 6 How.)
 

 In the case of Burr
 
 v.
 
 Health, (6 How. S. C. R., 228,) this court said, without any reference to the law of Louisiana: “ That the general rule was, when the wife complains of her husband, and asks relief against him, she must use the name
 
 *590
 
 of some other person in prosecuting the suit; but where the acts of the husband aré not complained of, he would seem to . be the most suitable person to unite with her in the suit. This is a matter of practice within the discretion of the court. It is sanctioned in Story’s Equity Pleading, and by Fonblanque. The modern practice in England has adopted a different course, by uniting the name of the wife with a person other than her' husband, in certain cases.”
 

 There are also exceptions in equity, which are wholly unknown at law. Thus, if a married woman claims some right in opposition to the rights claimed by the husband, and it becomes proper to vindicate her rights against her husband, she cannot maintain a suit against him at law; but in equity she may do so, and against all others who may be proper or necessary parties. But it must be done under the protection of some other person who acts as her next friend, and the bill is accordingly exhibited in her name by such next friend. (Story’s Equity Pl., 6th ed., sec. 61, p. 61.) It is also said, in the same work, to be our constant experience, that the husband may sue the wife, or the wife the husband, in equity, .notwithstanding neither of them can sue the other at law. (Cannel
 
 v.
 
 Buckle, 2 P. Will., 243, 244; Ex parte Strangeways, 3 Ark., 478; Fonblanque Eq., B. 1, ch. 2, sec. 6, note N; Brooks
 
 v.
 
 Brooks, Pre. Ch., 24; Mitford Pl., by Jeremy, 28.) These citations have been made to show the large jurisdiction which a court of equity has to secure the rights of married women, when it may be necessary to exert it with the assistance of the husband, or when he improperly interferes with them, so as to make it necessary for the wife to defend herself against his unwarranted claims to her property. The result of that jurisdiction now is, that the wife may, in all such instances, sue her husband by her next friend.
 

 There is, too, another ground of jurisdiction in equity, just as certainly established as that is of which we have just spoken. It comprehends the ease before us. It is, that courts of equity will interfere to compel the payment of alimony which has been decreed to a wife by the ecclesiastical court in England. Such a jurisdiction is ancient there, and the principal reason
 
 *591
 
 for its exercise is equally applicable to tbe courts of equity iu the United States. It is, that when a court of competent jurisdiction over the subject-matter and the parties decrees a divorce, and alimony to the wife as its incident, and is unable of itself to enforce the decree summarily upon the husband, that courts of equity will interfere to prevent the decree from being defeated by fraud. The interference, however, is limited to cases in which alimony has been decreed; then only to the extent of what is due, and always to cases in which no appeal is pending from the decree for the divorce or for alimony. (Shaftoe
 
 v.
 
 Shaftoe, 7 Vesey, 171; Dawson
 
 v.
 
 Dawson, 7 Ves., 173; Haffey
 
 v.
 
 Haffey, 14 Ves., 261; Angier
 
 v.
 
 Angier, Pre. Ch., 497; Cooper’s Eq. P., ch. 3, pp. 149, 150; Coglan
 
 v.
 
 Coglan, 1 Ves., p. 194; Street
 
 v.
 
 Street, 1 Turn. and Tapel, 322.)
 

 The parties to a cause for a divorce and for alimony are as much bound by a decree for both, which has been given by one of our State courts havingjurisdiction of the subject-matter and over the parties, as the same parties would be if the decree had been given in the ecclesiastical court of England. The decree in both is a judgment of record, and will be received as such by other courts. And such a judgment or decree, rendered in any-State of the United States, the court having jurisdiction, will be carried into judgment in any other State,-to have there the same binding force that it has in the State in which it was originally given. For such a purpose, both the equity courts of the United States and the same courts of the States have jurisdiction.
 

 We observe, in confirmation of what has just been said, that the jurisdiction of the courts of the United States is derived from the Constitution,-and from legislation in conformity with it. The first limitation by the latter upon the jurisdiction of the equity courts of the United States is, that no suit can be sustained in them, where a plain, adequate, and complete remedy may be had at law. The court has said: “ It is not enough that there is a remedy at law; it must be plain and adequate, or,, in other words, as practical and efficacious to the ends of justice, and its prompt administration, as the remedy in equity. (Boyce’s Ex’x
 
 v.
 
 Grundy, 3 Peters, 210; United States
 
 v.
 
 Row
 
 *592
 
 land, 4 Wh., 108; Osborn and the United States Bank, 9 Wh., 841, 842.) It is no objection to equity jurisdiction in the courts of the United States, that there is a remedy under the local law, for the equity jurisdiction of the Federal courts is the same in all of the States, and is not affected by the existence or nonexistence of an equity jurisdiction in the State tribunals. It is the same in nature and extent as the jurisdiction of England, whence it is derived.” (Livingston
 
 v.
 
 Story, 9 Peters, 632.) Such a suit for the enforcement of a decree for alimony as that before us is not an exception, unless the court has not jurisdiction over the parties, and the amount be not such as is required to bring it into this court by appeal.
 

 We proceed to show that it has jurisdiction. The Constitution requires, to give the courts of the United States jurisdiction, that the litigants to a suit should “be citizens of different States.” The objection in this case is, that the complainant does not stand in that relation to her husband, the defendant; in other words, it is a denial of a wife’s right, who has been divorced
 
 a mensa et thoro,
 
 to acquire for herself a domiciliation in a State of this Union different from that of her husband in another State, to entitle her to sue him there by her next friend, in a court of the United States having equity jurisdiction, to recover from him alimony which he has been adjudged to pay to her by a court which had jurisdiction over the parties and the subject-matter of divorce, where the decree was rendered.
 

 We have already shown, by many authorities, that courts of equity have a jurisdiction to interfere to enforce a decree for alimony, and by cases decided by this court; that the jurisdiction of the courts of equity of the United States is the same as that of England, whence it is derived. On that' score, alone, the jurisdiction of the court in the case before us cannot be successfully denied.
 

 But it was urged by the learned counsel who argued this cause for. the defendant, that husband and wife, although allowed to live separately under a decree of separation
 
 a mensa et thoro,
 
 made by a State court having competent jurisdiction, are still so far one person, while the married relation, con
 
 *593
 
 tinues to exist, that they cannot become at the same time citizens of different States, within the meaning of the Federal Constitution, and therefore the court below had no jurisdiction. It was also said, for the purpose of bringing suits for divorces, they may' acquire separate residences in fact; but. this is an exception founded in necessity only, and that the legal domicil of the'wife, until the marriage be dissolved, is the domicil of the husband, and is changed with a change of his domicil.
 

 Such, however, are not the views which have been taken in Europe generally, by its jurists, of the domicil of a wife divorced
 
 a mensa et thoro.
 
 They are contrary, too, to the. generally-received doctrine in England and the United States upon the point.
 

 In England it has been decided, that where the husbahd and wife are living apart, under a judicial sentence bf separation-, that the domicil of the husband is not the domicil of the wife-(English Law and Equity Reports, 9 vol., 598; 2 Robertson, 545.) When Mr. Philemore wrote his treatise upon the law of domicil, he said he was not aware of any decided case upon the question of the domicil of a wife divorced
 
 a mensa et thoro, bat there can be little doubt, that in England, as in France, it would not be that of her husband, but the one chosen for herself after the divorce.
 
 In support of his opinion, he cites Pothier’s Introd. aux Coutume, p. 4; Mercadie in his Commentary upon the French Code, vol. 1, p. 287; the French Code, tit. 111, art. 108; the Code Civile of Sardinia; and Cocher’s Argument in the Duchess of Holsten’s case, Ouvres, 1, 2, p. 223.
 

 Mr. Bishop, in his Commentaries on the Law of Marriage and Divorce, has a passage so appropriate to the point we are discussing, that we will extract i.. entire. It is of the more value, too, because it comprehends the opinions entertained by eminent American jurists and judges in respect to the domicil of a wife divorced
 
 a mensa et thoro.
 
 He says, in discussing the jurisdiction of courts where parties sought a divorce abroad for causes which would have been insufficient at home, that “ it was necessary to settle a preliminary question, namely, whether for the purpose of a divorce suit the husband and wife can have separate domicils; that the general doctrinéis fam liar, that
 
 *594
 
 the domicil of the wife is that of the husband. But it will probably be found,' on examination, that the doctrine rests upon the legal duty of the wife to follow and dwell with the husband wherever he goes.
 

 “ If he commits an offence which entitles her to have the marriage dissolved, she is not only discharged thereby immediately, and without a judicial determination of the question, from her duty to follow and dwell with him, but she must abandon him, or the cohabitation will amount to a condonation, and bar her claim to the remedy. In other words, she must establish a domicil of her own, separate from her husband, though it may be, or not, in the same judicial locality as his. Courts, however, may decline to recognise' such domicil in a collateral proceeding — that is, a proceeding other than a suit for a divorce. But where the wife is plaintiff in a divorce suit, it is the burden of her application, that she is entitled, through the misconduct of her husband, to a separate domicil. So
 
 when parties are already living under a judicial separation, the domicil of the wife does not follow that of the husbmd.”
 
 (Section 728.)
 

 Chief Justice Shaw says, in Harlean
 
 v.
 
 Harlean, (14 Peck, 181, 185,) the law will recognise a wife as having a separate existence and separate interests and separate rights, in those cases where the express object of all proceedings is to show that the relation itself ought to be dissolved,
 
 or so modified
 
 as to establish separate interests, and especially a separate domi cil and home. Otherwise the parties, in this respect, would stand upon a very unequal footing, it being in the power of the husband to change his domicil at will, but not in that oí the wife.
 

 The cases which were cited against the right of a wife, divorced from bed and board, to choose for herself a domicil, do not apply. (Donegal
 
 v.
 
 Donegal, in 1 Addam’s Ecclesiastical Rep., pp. 8, 19.) That of Shachell
 
 v.
 
 Shachell, cited in Whitcomb
 
 v.
 
 Whitcomb, (9 Curtteis Ecclesiastical Rep., p. 352,) are decisions upon the domicil of the wife, when living apart from her husband by
 
 their mutual agreement
 
 but not under decrees divorcing the wife from the bed and board of the husband. The leading.case' under the same circumstances is that
 
 *595
 
 of Warrender
 
 v.
 
 Warrender, (9 Bligh., 103, 104.) In that ease, Lord Brougham makes the fact that" the husband and wife were living apart by agreement, and not by a sentence of divorce, the foundation of the judgment. The general rule is, that a voluntary'separation will not give to the wife a different domiciliation in law from that of her husband. But if the husband, as is the fact in this case, abandons their domicil and his wife, to get rid of all those conjugal obligations which the marriage relation imposes upon him, neither giving to her the - necessaries nor the comforts suitable to their condition and his fortune, and relinquishes altogether his marital control and-protection, he yields up that power and authority over her which alone makes his..domicil hers, and places her in a situation to sue him for a divorce
 
 a .mensa et thoro,
 
 and to ask the court having jurisdiction of her suit to allow her.from her husband’s means, by way of alimony, a suitable maintenance and support. When that has been done, it becomes a judicial debt of record against the husband, which may be enforced by execution or attachment against his person, issuing from the court which gave the decree; and when that cannot be done on account of the husband having left or fled from that jurisdiction to another, where the process of that court cannot reach him, the wife, by her next friend, may sue him wherever he may be found, or where he shall have acquired a new domicil, for the purpose of recovering the alimony due to her, or to
 
 carry the decree into a judgment there with the same effect that it has in the State in which the decree was given.
 
 Alimony decreed to a wife in a divorce of separation from bed and board is as much a debt of record, until the decree has been recalled, as any other judgment for money is. When it is not paid, the wife can sue her husband for it in a court of' equity, as an incident of that condition which gave to her the right to sue him, by her next friend, for a divorce.
 

 It was decided in the State of Massachusetts, as early as the year 1800, that there were, circumstances under which it appears to be absolutely necessary for the wife to sue, as
 
 for th
 
 e
 
 recovery of alimony.
 
 That case was the same, in its circumstances, as this with which we are dealing. The wife libelled
 
 *596
 
 for a divorce
 
 a mensa et thoro,
 
 on account of the extreme cruelty of her husband. The divoi'ce was decreed; and the husband was ordered to pay to her alimony, in quarterly instalments. The wife afterwards brought an action against him for arrears. He demurred to the declaration ; and judgment was given for her. (Wheeler
 
 v.
 
 Wheeler, 2 Dana, H. 310.)
 

 The same has been held in other cases in that State. It is now established doctrine there,-and in some of our other Slates. They hold that a decree for a divorce, with an allowance for alimony, is as much a judgment as if it had been obtained on the common-law side of the court.
 

 Rogers, Justice, in Clark
 
 v.
 
 Clark, (6 Watts and Sergeant,) places the right to recover arrears of alimony on the ground that the husband, after the decree for a divorce was rendered, had withdrawn himself from the jurisdiction of the court, to prevent him from being forced by attachment to pay the alimony which had been decreed to the wife.'
 

 In the State of New York, a wife may file a bill against her husband for alimony; and it appearing that he had abandoned her without any support, and threatened to leave the State, the court, on the wife’s petition, granted a writ of
 
 ne exeat res publica
 
 against him. (Denton
 
 v.
 
 Denton, 1 J. C., 2, 364.)
 

 In South Carolina, where the court, having no power to grant divorces, decreed to a wife alimony, on her bill praying for that remedy only, and ordered the husband to give security for its payment, the sheriff, having taken him into custody, suffered him to escape; it was held that the wife. might maintain, by her next friend, an action at law against the sheriff for the escape. Smith, Justice, said* “ It had been urged in the argument that this woman, béing á
 
 feme covert,
 
 could not maintain the action by her next friend. If that argument were to prevail, there would be a failure of justice, which our law abhors, as there would be no means. of enforcing a decree of a wife against her husband for alimony. The court of equity could order a refractory husband to be attached, and the sheriff would let him go, if he' thought proper; then, if the wife could not sue by her next fi’iend, Who could
 
 T
 
 The law provides no other cóurse. And, upon this occasion, I would adopt the course
 
 *597
 
 of a very learned judge, ‘ if there is no precedent, I will make one.’ ”
 

 In Ohio, a wife divorced
 
 a mensa et thoro
 
 may maintain ejectment for a lot of land, the use of which was allowed to her as alimony. In Virginia, it was said, in Purcell
 
 v.
 
 Purcell, (4 Hen. and Mansf., 507,) that the court of chancery has jurisdiction in all cases of alimony. In Maryland, the high court of chancery, from the earliest colonial'times, exercised the jurisdiction to decree alimony, but not to grant divorces.
 

 . This, was done under the belief that it belonged to the high court of chancery, in the absence of ecclesiastical tribunals; and in 1777 an act of Assembly provided that the chancellor shall and may hear and determine all causes for alimony, in as full and ample a manner as such causes could be heard and determined by the laws of England, in the ecclesiastical courts there.
 

 Under that statute, alimony is granted to the wife whenever the English courts would be authorized to render' a divorce from bed and.board; but the court has no power to extend the remedy, and decree a divorce also.
 

 The inherent jurisdiction of a court of equity to decree alimony has also been acknowledged in Alabama. In North Carolina, bills of equity by the wife against the husband, praying alimony, were sustained, from an early day, without question as to the lawfulness of the jurisdiction. ■
 

 Where such a decree has been made, whether done as an inherent power in equity to grant a decree for alimony, or as an auxiliary to enforce the payment of it as an incident of a divorce
 
 a mensa et thoro,
 
 there are no decisions, either in the English or American books, denying the wife’s right to sue her husband for arrears of alimony due, by her next friend.
 

 In some of the States she may do so, without the intervention of her next friend; but she cannot do that, as has been said before, in the courts of the United States having equity jurisdiction.
 

 We think also that the cases which have been, cited in this opinion are sufficient to show, whatever may have been the doubts in an earlier day, that a wife under a judicial sentence
 
 *598
 
 of separation from bed and board is entitled to make a domicil for herself, different from that of her husband, and that she may by her next friend sue her husband for alimony, which he had been decreed to pay as an incident to such divorce, or when it has been given after such a decree by a supplemental bill. In our best reflections, we have been unable to come to a different result. The privileges allowed to a wife under such circumstances rest upon the facts that the separation is only grant-able
 
 propter Scevitiam;
 
 that the alimony commonly allowed is mo more than enough to give her a home and a scanty main'''-tenance, .almost always necessarily short of that from which 'her husband has driven her; and that as a consequence she should be permitted to change her domicil, where she may live upon her narrow allowance with most comfort and the least mortification. Her right to sue her husband, by her next frien d, for alimony already decreed, rests upon higher considerations, br upon legal principles which have been so well expressed by Chief Justice Shaw, as to her right to sue in the State of Massachusetts, that we will use his language, deeming it to be applicable in any other State in the American Union:
 

 “After such a divorce, the law of this Commonwealth recognises her right to acquire and hold property, to take her own earnings to her own use, tor the maintenance of herself and her children. She is deprived of the protection, and exempted from the control, of her husband. She may by the decree of the court granting the divorce, and pursuant to the provision of the statute law of the Commonwealth, be charged with the custody, and consequently with the support and maintenance, of the children of the marriage. The reason, therefore, why a wife cannot sue or be sued without joining or being joined with her husband, docs not exist. The relation in which the divorce
 
 a mensa et thoro
 
 places the parties opposes a joinder. If it were necessary to join thehfisband as-plaintiff, he might release her rights, by which she would be subjected to costs; if he might be joined as defendant, he might be made subject to her debts; both of which consequences are repugnant to the true relation of .divided and separate interests, in which the law by such a decree places them. -Whilst the law thus recog
 
 *599
 
 nises the right of a woman so divorced to acquire and take the proceeds of her industry to her own use, it recognises her power to make contracts; and if she could not sue and be sued, it would present the anomalous case in which the law recognises a right without affording a remedy for vindicating it, and subjects a party to a duty without lending its aid to enforce it.”
 

 We do not deem it necessary to show, further than it has already been done in this opinion, that the equity side of the court was the appropriate-tribunal for this cause. We have, however, verified the correctness and applicability of several of the cases cited in his argument by the counsel of the complainant to sustain that point, and deem them decisive.
 

 The only point remaining for our determination is that which questions the complainant’s right to pm’sue her remedy in the equity side of the District Court of the United States in the State of Wisconsin.
 

 The facts are, that she married the defendant in the State of New York, the State then of her husband’s domicil; that they lived there until the decree of separation was made; that she has retained it ever since as her domicil, but that the defendant, after the decree of separation was given, left her domicil in New York for another in the State of Wisconsin, in which he says that he hqs acquired a domicil. The complainant comes into court in the character of citizen of the State of New York. Mrs. Barber is recognised to be such by the laws of that State, and her
 
 status
 
 as a divorced woman
 
 a mensa et thoro
 
 by a court of competent jurisdiction in New York, and the rights of citi- ' zenship which she has under it there, are decisive of her right to sue in the courts of the United States, as that,has been done in this instance. Thé citizenship of the defendant is admitted and claimed by him to be in the State of Wisconsin. His voluntary change of domicil from New York to Wisconsin makes him suable there. That might have been done in a State court in equity as well as in the District-Court of'the United States; but she had a right to pursue her remedy in either. She has chosen to do so in a court of the United States, which has jurisdiction over the subject-matter of-her claim to the same extent that a court of equity of a State has, and we think that the
 
 *600
 
 court below has not committed error in sustaining its jurisdiction over this cause, nor in the decree which it has made. We affirm the decree of that court, and direct a mandate to be issued accordingly.
 

 Mr. Chief Justice TANEY, Mr. Justice DANIEL, and Mr. Justice CAMPBELL, dissented.
 

 Mr. Justice DANIEL:
 

 Erom several considerations, which to.me appear essentially important, I am constrained to differ in opinion with the majority of the court in this case.
 

 1. With respect to the authority of the courts of the United States to adjudicate upon a controversy and between parties such as are presented by the record before us. Those courts, ' by the Constitution and laws of the United States, are invested with jurisdiction in controversies between citizens of different States. In the exercise of this jurisdiction, we are forced to inquire, from the facts disclosed in the cause, whether during the existence of the marriage relation between these parties the husband and wife can.be regarded as citizens of’different States ? Whether, indeed, by. any regular legal deduction consistent with that relation, the wife can, as to her civil or political
 
 status,
 
 be regarded as a citizen or person ?
 

 By Coke and Blackstone it is said: “ That by marriage, the husband and wife become one person in law; that is, the very being ox legal existence of the woman is suspended during the marriage, or at least is incorporated or consolidated into that of the husband, under whose wing and protection she performs everything. Upon this principle of union in husband and wife, depend almost all the rights, duties, and disabilities, that either of them acquire by the marriage. Eor this reason, a man cannot grant anything to his wife, norenter into a covenant with her, for the grant would be to suppose her separate existence, and to covenant with her would be only to covenant with himself; and therefore it is’generally true, that all compacts made between husband and wife, when single, are voided by the intermarriage.” (Co. Lit., 112; Bla. Com., vol.
 
 *601
 
 1, p. 442.) So, too, Chancellor Kent, (vol. 2, p. 128:) “ The legal effects of marriage are generally deducible from the principle of the common law, by which the husband and wife are regarded as one person, and her legal existence and authority in a degree lost and suspended during the existence of the matrimonial union.”
 

 Such being the undoubted law of marriage, how can it be conceived that pending the existence of this relation the unity it creates can be reconciled with separate and independent capacities in that unity, such as belong to beings wholly disconnected, and each
 
 sui juris ?
 
 Now, the divorce
 
 a mensa et thoro
 
 does not sever the matrimonial tie; on the contrary, it recognises and sustains'that tie, and the allowance of alimony arises from and depends upon reciprocal duties and obligations involved in that connection, The wife can have no claim to alimony but as wife, and such as arises from the performance of her duties as wife; the husband sustains' no responsibilities save those which flow from his character and obligations as husband, presupposing the existence and fulfilment of conjugal obligations on the part of the wife. It has been suggested that by the regulations of some of the States a married woman, after separation, is permitted to choose a residence in a community or locality different from that in which she resided anterior to the separation, and different from the residence of the husband. It is presumed, however, that no regulation, express or special-,' can be requisite in order to create such a permission. This would seem to be implied in the divorce itself; the purpose of which is, that the wife should- no longer remain
 
 sub polestate viri,
 
 but should be freed from the control which had been abused, and should be empowered to select a residence and such associations as would be promotive of her safety and her comfort. But whether expressed in the decree for separation, or implied in the divorce, such a privilege does . not destroy the marriage relation; much less does it remit the parties to the position in which they stood before marriage, and create or revive ante-nuptial, civil, or political rights in the wife. Both parties remain subject to the obligations and duties of husband and wife. Neither can marry during the
 
 *602
 
 lifetime of the other, nor do any act whatsoever which is a wrong upon the conjugal rights and obligations of either. From these views it seems to me to follow, that a married woman cannot during the existence of the matrimonial relation, and during the life of the husband the wife cannot be remitted to the civil or political position of
 
 a feme sole,
 
 and cannot therefore become a
 
 citizen
 
 of a State or community different from that of which her husband is a member.
 

 2. It is not in accordance with the design and operation of a Government having its. origin in causes and necessities, political, general, and external, that it should assume to regulate the domestic relations of society ; should, with a kind of inquisitorial authority, enter the habitations and even into the chambers and nurseries of private families, and inquire into and pronounce upon the morals and habits and affections or antipathies of the members of every household. If such functions are to be exercised by the Federal tribunals, it is important to inquire by what rule, or system of proceeding, or according to what standard, either of ethics or police, they are to be enforced. Within the range subjected to the political, general, and uniform control of the Federal Constitution, there are numerous commonwealths, and within these are ordinances much more numerous and diversified, for the definition and enforcement of the duties of their respective members. Now, to which of these ordinances, or to which of these various systems of regulation, will the Federal authorities resort as a source of jurisdiction, or as a rule of decision, especially when it is borne in mind that it is only between members of different communities, persons legitimately subject to such separate rules of obligation or policy, that the tribunals of the Federal Government have cognizance; when, too, it is recollected that the Federal Government is clothed with no power' to execute the laws of the States. The Federal tribunals can have no power to control the duties or the habits of the different members of private families -in their domestic intercourse. This power belongs exclusively to the particular communities of-which those families form parts, and is essential to the order and to the very existence of such communities.
 

 
 *603
 
 It has been suggested, that by the decree for separation
 
 a mensa et ihoro,
 
 the husband and wife have become citizens of different States, and that the allowance to the wife is in the nature of a debt, which, as a citizen of a different State, she may enforce against the husband in the Federal courts. This suggestion, to my mind, involves two obvious fallacies. The first is the assumption, that by the decree the wife is made a citizen at all, or a person
 
 sui juris,
 
 whilst yet she is wife, still bound by her conjugal obligations, the faithful observance of which, on her part, is the foundation of her claim to maintenance as wife, and which claim she would forfeit at any time by a violation of these obligations. Indeed, the form of her application is an acknowledgment that she is not
 
 sui juris,
 
 and not released from her conjugal disabilities and obligations, for she sues by
 
 prochein ami.
 

 The second error in the position before mentioned is shown by the character and objects of the allowance made as alimony to a wife. This allowance is not in the nature of an absolute debt. It is not unconditional, but always dependent upon the personal merits and conduct of the wife — merits and conduct which must exist and continue, in order to constitute a valid claim to such an allowance. This allowance might unquestionably be forfeited upon proof of criminality or misconduct of the wife, who would not be permitted to enforce the payment of that to which it should be shown she had lost all just claim; and this inhibition, it is presumed, might embrace as well a portion of that allowance at any time in arrears, as its demand in future. The essential character, then, of this allowance, viz : its being always conditional and dependent,,both for its origin and sontinuation, upon the circumstances which produced or justified it, is demonstrative of the propriety and. the necessity of submitting it-to the control of that" authority whose province it was to judge of those circumstances. That authority can exist nowhere but with the power and the. right to control the private and domestic, relations of life. The Federal Government has no snch power; it has no commission of
 
 censormorum
 
 over the several States and their people.
 

 But, irrespective of the disability of the wife as a party, I
 
 *604
 
 hold' that the courts of the United States, as courts of
 
 chancery,
 
 cannot take cognizance of cases' of alimony..
 

 It has been repeatedly ruled by‘this court, that the jurisdic'ion and practice in the courts of the United States,
 
 in equity
 
 are not to be governed by the practice in the State courts, but that they are to be apprehended and exercised according to the principles of equity, as distinguished and defined in that country from which we derive our knowledge of those principles. Such is the law as announced in the cases of Robenson
 
 v.
 
 Campbell, (3 Wheaton, 212;) of the United States
 
 v.
 
 Howland, (4 Wheaton, 108;) of Boyle
 
 v.
 
 Zacharie & Turner, (6 Peters, 648.) It is repeated in the cases of Story
 
 v.
 
 Livingston, (13 Peters, 359,) and of Gaines
 
 v.
 
 Relf, (15 Peters, 9.) Now, it is well known that the court of chancery in England does not take cognizance of the subject of alimony, but that this is one of the subjects within the cognizance of the ecclesiastical court, within whose peculiar jurisdiction marriage and divorce are comprised. Of these matters, the court of chancery in England claims no cognizance. Upon questions of settlement or of contract connected with marriages, the court of chancery will undertake the enforcement of such contracts, but does not decree alimony as such, and independently of such contracts.
 

 In Roper on the Law of Baron and Feme, (vol. 2, p. 307,) it is stated that Lord Loughborough, in a case in 1 Vesey, jun., 195, is reported to have said, that if a wife applied to the court of chancery upon a
 
 supplicavit
 
 for security of the
 
 peace
 
 against her husband, and-it was necessary that she should live apart as incidental to that, the chancellor will allow her separate maintenance. That this passage has been quoted by Sir William Grant in 10 Ves., 397, and that the same opinion was advanced in the case of Lambert
 
 v.
 
 Lambert, (2 Brown’s Parliamentary Cases, p. 26.) “But,” continues this writer, “there seems to be'no reported instance of such a jurisdiction, and it would be inconsistent with the object and form of the writ of
 
 supplicavit;
 
 ” and he concludes with the position that “the wife can only obtain a separate maintenance in the ecclesiastical courts where.alimony is decreed to be paid during the pendency of any suit between husband and wife, and after its
 
 *605
 
 termination, if it ends in a sentence of separation on the ground of the husband’s misconduct.”
 

 From the above views, it would seem to follow, inevitably, that as the jurisdiction of the chancery in England does not extend to or embrace the subjects of divorce and alimony, and as the jurisdiction of the courts of the United States in chancery is bounded by that of the chancery in England, all power or cognizance with respect to those subjects by the courts of the United States
 
 in chancery
 
 is equally excluded.
 

 It has been said that, there being no ecclesiastical court in the United States, many of the States have assumed jurisdiction over the subjects of divorce and alimony, through the agency of their courts of equity. The answer to this suggestion is, first, that it concedes the distinction between the character and powers of these different tribunals. In the next place, it may have been that the jurisdiction exercised by the State courts may have been conferred by express legislative grant; or it may have been assumed by those tribunals, and acquiesced in from considerations of convenience, or from mere toleration; but whether expressly conferred upon the State courts, or tacitly assumed by them, their example and practice cannot be recognised as sources of authority by the courts of the United States. The origin and the extent of their jurisdiction must be sought in the laws of the United States, and in the settled rules and principles by which those laws have bound them.