Mrs. Daudrille H. CAIN, formerly Mrs. Daudrille H. King

v.

George Harold KING, Jr.

Civ. A. No. 69–96.

United States District Court, E. D. Louisiana, Baton Rouge Division.

May 20, 1970.

Tom F. Phillips, Taylor, Porter, Brooks, Fuller & Phillips, Baton Rouge, La., L. Lamar Beacham, Jackson, Miss., for plaintiff.

Victor A. Sachse, III, Breazeale, Sachse & Wilson, Baton Rouge, La., for defendant.

WEST, Chief Judge:

This case involves a dispute concerning the construction and effect of a marital separation agreement entered into between the plaintiff, Mrs. Daudrille H. Cain (formerly Mrs. Daudrille H. King) and the defendant, Mr. George Harold King, Jr. This couple was married in 1942, and of the marriage three children were born. In late 1962 or early 1963, irreconcilable differences arose between them and a divorce became imminent. At that time both parties were residing in the State of Mississippi. In order to "adjust without submission to the Court the matter of support and maintenance for wife and children," the plaintiff and defendant entered into a pre-divorce, marital settlement agreement, which read, in toto, as follows:

"The undersigned, being unable to adjust their marital difficulties to the point of reconciliation, and an action for divorce in the Chancery Court of Madison County, Mississippi, being imminent, desiring to adjust without submission to the Court the matter of support and maintenance for wife and children, taking into account that the undersigned Daudrille H. King, wife, has certain independent income, and that the children, too, each have certain income from established trusts, the status of none of which is affected hereby, do hereby agree as follows:

"1. That the husband and father, G. H. King, Jr., beginning June 10, 1963, shall pay monthly to Daudrille H. King, in Canton, Mississippi, or any other City in which she may take up residence, the sum of $250.00.

"2. That beginning upon same date, he shall pay over to Daudrille H. King, for the support of their daughter, Lisa Hollaway King, $150.00 per month, until Lisa shall complete her sub-college school work, after which time her full care, education and maintenance shall be upon him as next herein provided for the other two children.

"3. That, effective upon said date, he assumes full financial responsibility for the care, education and maintenance of Linda Elaine King and G. H. King, III, their other two children, such expenditures to be limited to what is reasonable under circumstances then existing, and on approximately the plane of their present standard of living.

"4. That the furniture and furnishings in the residence which they have been occupying in Canton shall wholly be the property of Daudrille H. King; and the furniture and furnishings in the residence at 2214 Wyoming Avenue, N.W., Washington, D. C., shall be wholly the property of G. H. King, Jr.

"5. That the custody of the three children, Linda Elaine King, George Harold King, III, and Lisa Hollaway King, may be awarded by the Chancery Court of Madison County, Mississippi, to Daudrille H. King; but G. H. King, Jr., shall be granted in such decree right to visit the children, and have them visit him, at times, for such time, at such places, and under such circumstances, as will be agreed upon by the parties hereto from time to time, and so as not to interfere with school work.

"The agreements of this paragraph shall not affect the continued jurisdiction of the Chancery Court of Madison County, Mississippi.

"6. This agreement may be made a part of any decree which will be rendered by the Chancery Court of Madison County, Mississippi, in the suit therein to be filed by Daudrille H. King, for divorce and relief incidental thereto, including the custody of the children, and neither party shall hereafter have any claim upon or against the other with respect to property and property rights not set forth hereinabove.

"Executed in duplicate this, 20th day of March, 1963.

"(Signed) George Harold King, Jr.

"George Harold King, Jr.

"(Signed) Daudrille H. King

"Daudrille H. King"

Two days later, on March 22, 1963, plaintiff filed suit for divorce in the Chancery Court of Madison County, Mississippi. On May 13, 1963, the Chancery Court entered a Divorce Decree, which decree, in accordance with Paragraph 6 of the marital settlement agreement, incorporated said agreement therein. The divorce decree reads as follows:

"IN THE CHANCERY COURT OF MADISON COUNTY, MISSISSIPPI

Mrs. Daudrille H. King,

Complainant

vs.

No. 18–162

G. H. King, Jr.

Defendant

DIVORCE DECREE

This cause coming on this day to be heard on the Original Bill, Waiver of Process and Consent to Hearing executed by the Defendant and filed in this cause more than five (5) days prior to this term of court and now in the files of this cause, and on oral testimony heard by the Chancellor in open court.

And it appearing to the Court that the causes for divorce alleged in the

Original Bill are good and sufficient grounds for divorce; and it appearing to the Court from the preponderance of the evidence and the Court does find that the causes stated in the Bill and the facts stated therein are all true as therein stated and that the Complainant is entitled to a divorce from the bonds of matrimony heretofore existing between said Complainant and said Defendant; and

That the parties hereto have entered into a property settlement, custody, maintenance and support agreement which is fair and just as between the parties hereto and their children, a photostatic copy of said settlement is as follows:

[Here is included a copy of the settlement agreement in full.]

It is therefore ordered, adjudged and decreed that the bonds of matrimony heretofore existing between Daudrille H. King, Complainant, and G. H. King., Jr., who is the same as George Harold King., Jr., Defendant, both being of the white race be and are hereby dissolved; and

It is further ordered, adjudged and decreed that the said G. H. King, Jr., Defendant, pay unto the Complainant, Daudrille H. King, the sum of Two-Hundred Fifty and no/100 ($250.00) dollars per month beginning June 10th, 1963; and that he shall pay over to Daudrille H. King for the support of their daughter, Lisa Hollaway King, the sum of One-Hundred Fifty and no/100 ($150.00) dollars per month until the said Lisa Hollaway King has completed her sub-college school work, after which time her full care, education and maintenance shall be provided by the said Defendant the same as for his other two children; and that upon said date June 10th, 1963 the said G. H. King, Jr. shall assume the full financial responsibility for the care, education and maintenance of Linda Elaine King and G. H. King, III, their two other children; and

That it is further ordered, adjudged and decreed that the furniture and furnishings in the residence which the parties hereto have been occupying in Canton, Mississippi shall be wholly the property of the said Daudrille H. King; and that the furniture and furnishings in the residence at 2214 Wyoming Avenue, N.W., Washington, D. C. shall be wholly the property of the said G. H. King, Jr.; and

It is further ordered, adjudged and decreed that Daudrille H. King shall have the custody of said three children, Linda Elaine King, G. H. King, III, and Lisa Hollaway King, but that G. H. King, Jr. is hereby granted the right to visit said children and have said children visit him at such times as not to interfere with their school work; and

It is further ordered, adjudged and decreed that said settlement entered into by the parties hereto is fully approved as being fair and just between the parties hereto and to their children and is made a part of this decree.

Ordered, adjudged and decreed, this the 13th day of May, 1963.

(Signed) C. D. Williams
Chancellor."

Pursuant to the agreement and decree, defendant, on or about June 10, 1963, delivered to the plaintiff a check for $400, representing the $250 due the plaintiff under Paragraph 1 of said agreement, and the $150 due for support of Lisa King, the youngest daughter, under the provisions of Paragraph 2 of the agreement. About eleven days later, on June 21, 1963, plaintiff remarried and became Mrs. William S. Cain, wife of a practicing attorney in Canton, Mississippi. When the next payment under the agreement became due on July 10, 1963, defendant, having learned of plaintiff's remarriage, delivered a check to her in the sum of $150, believing that since the plaintiff had remarried he no longer owed her the $250 per month which he regarded as alimony or maintenance and support payments. Plain-

tiff did not complain about the reduction in payments, and consequently, each month after July 10, 1963, defendant continued to deliver to the plaintiff the sum of $150 as called for under the child support provision of the agreement and decree. No demand was ever made upon defendant for resumption of the $250 monthly payments until more than five years later when suddenly, in August of 1968, demand was made by plaintiff upon the defendant for some $17,863.75, which plaintiff contended was accumulated back monthly payments due her under Paragraph 1 of the agreement. This demand was made by way of a law suit filed by the plaintiff against the defendant in the State Court in Madison County, Mississippi. This case was tried on February 5, 1969, and the Chancellor took it under advisement. Before a decision was rendered, however, the Chancellor died. In the meantime the defendant had become a resident of the State of Louisiana and the plaintiff elected to file a new suit, making the same demands in this Court, alleging diversity jurisdiction. At a hearing before this Court on November 7, 1969, it was agreed that both parties would submit to the Court their evidence in written form, together with a transcript of the testimony taken in the Mississippi State Court, and their briefs. This has now been done. Two questions are presented for decision: first, whether or not the Court has jurisdiction over this seemingly marital matter, and secondly, if it does, did the marital settlement agreement require the defendant to continue to make the $250 monthly payments to the plaintiff for the rest of her life even after her remarriage on June 21, 1963.

Plaintiff contends that this is simply a suit on a contract which forms no part of the divorce decree, and since there is diversity and more than $10,000 involved, the Court has diversity jurisdiction. Plaintiff further contends that this agreement did not become merged in the divorce decree, and that therefore it is not governed by rules pertaining to alimony provisions of a divorce decree. In-

deed, plaintiff says the $250 monthly payments were in no sense of the word alimony or support or maintenance payments, but instead constituted a pre-divorce property settlement, i. e., that these payments were accepted by her in lieu of other property to which she was or might have been entitled at the time of her divorce.

The defendant does not contest the jurisdiction of this Court but simply contends that the agreement in question became merged in the divorce decree, and that the particular provision of the agreement pertaining to the $250 monthly payments simply provided for alimony or support and maintenance of the plaintiff and hence, under Mississippi law, terminated upon her remarriage. The defendant alternatively says that even if the agreement did not become merged in the divorce decree, a fair construction thereof leads to the conclusion that the $250 monthly payments were intended by the parties to be support payments and that it was the intention of the parties that the payments were to terminate upon plaintiff's remarriage.

After due consideration, this Court concludes that jurisdiction is present and that plaintiff's contention that the $250 monthly payments were intended to continue after her remarriage is simply not supported by the evidence. In connection with this conclusion, the Court now makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. The plaintiff and the defendant were married in the year 1942 and continued to be man and wife until their divorce in May of 1963.

2. On March 20, 1963, in contemplation of an imminent divorce, plaintiff and defendant entered into a settlement agreement, the content of which is hereinbefore set out in full.

3. The primary purpose of this settlement agreement was, as stated therein, "to adjust without submission to the Court the matter of support and maintenance for wife and children," and additionally to provide for amicable property

settlement and custody of the couple's children.

4. That a full reading of the agreement leads to the inescapable conclusion that Paragraph 1 of the agreement was intended to provide for maintenance and support for the plaintiff in the sum of $250 per month, and was not intended to constitute a property settlement as contended by the plaintiff. To hold otherwise would make the reference to "support and maintenance for life" in the preamble to the agreement pure surplusage, because there was no other provision in the agreement which could be interpreted to constitute "support and maintenance" payments to the plaintiff. This conclusion is further supported by reference to the affidavits of the defendant and of Hermon Dean, Esquire, the attorney who represented both the plaintiff and the defendant in the preparation of the settlement agreement and in the divorce proceedings. The defendant explains in his affidavit that it was his wish that the plaintiff and the children be permitted to continue to reside in the house which they had been occupying in Canton, Mississippi, and that he would continue to reside in their home in Washington, D. C. This house in Canton, Mississippi, was owned by King Lumber Industries, of which the defendant was a part, and that corporation was advised by its tax counsel that if Mrs. King continued to reside in the corporation-owned house after her divorce from the defendant, the corporation should charge a reasonable rental therefor, which they set at the sum of $250 per month. This was agreed upon and hence the defendant agreed to pay the rental monthly to the plaintiff, who in turn was to pay it to King Lumber Industries. Then, in the event the plaintiff decided not to continue living there, the agreement provided that the same amount for rental would be paid to her wherever she might choose to reside. Plaintiff states in her affidavit that Mr. King, Sr., the father of the defendant, was going to pay her $250 per month for rent, and that she would in turn pay

it back to the corporation. But the evidence is void of any testimony that Mr. King, Sr., ever paid her anything for rental, and consequently, it is only logical to conclude that the agreement as finally executed intended to, and did in fact provide that this monthly rental payment was to be made by the defendant directly to the plaintiff as support and maintenance payments.

5. That, as stated in the settlement agreement, the amount of these support payments to the plaintiff was arrived at after considering the reasonable rental required for the home in which the plaintiff was living, and after taking into consideration the fact that the plaintiff had certain independent income, as did each of the children. The agreement specifically provided that these independent incomes would not be affected by the settlement agreement.

6. The support and maintenance of the children was provided for by Paragraphs 2 and 3 of the agreement, and is not in question.

7. The custody of the children was provided for by Paragraph 5 of the agreement, and is not in question.

8. The property settlement between the parties was provided for by Paragraph 4 of the agreement, and it is not for this Court to pass upon the adequacy or inadequacy of the property settlement as such.

9. Paragraph 6 of the agreement specifically authorizes the Chancery Court of Mississippi to make this settlement agreement a part of its divorce decree.

10. When the divorce decree was rendered by the Chancery Court it found that "the parties hereto have entered into a property settlement, custody, maintenance and support agreement which is fair and just as between the parties hereto and their children * * *."

11. The Chancery Court then proceeded to make this agreement an integral part of its decree.

12. A reading of the divorce decree, as hereinbefore set forth, clearly indicates that support and maintenance for

**16**

the plaintiff were fairly provided for by the settlement agreement, and, aside from the mention of the independent income of the plaintiff, the only support provision contained in the decree is the $250 monthly payments here involved.

13. The Court finds, as a fact, that the settlement agreement was, by consent of the parties, merged with and did become a part of the divorce decree, and that the provision contained therein for payment by the defendant to the plaintiff of $250 per month was intended both by the parties to the agreement and by the Chancery Court to constitute payments for alimony to, or maintenance and support of, the plaintiff, rather than to form any part of a property settlement between the parties.

14. Defendant terminated these $250 monthly payments immediately upon plaintiff's remarriage in July, 1963, because of his belief that these support payments were intended to be terminated in the event of remarriage.

15. Plaintiff made no complaint of any kind in connection with the termination of these payments, and made no demand that the payments be resumed until some five years after the payments were terminated.

16. As evidenced by the affidavit of Hermon Dean, Esquire, the attorney who represented both the plaintiff and the defendant in connection with the preparation of this agreement, it was his understanding and belief that the $250 payments were agreed upon for the purpose of providing Mrs. King with rent money for suitable habitation, and it was further his understanding that these payments were in the nature of alimony, support, and maintenance, and that defendant's obligation to make said payments would terminate in the event of plaintiff's remarriage. Mr. Dean, additionally, according to his affidavit, so expressed himself immediately upon hearing of Mrs. King's intention to remarry.

17. The Court finds, as a fact, that it was the intention of the parties, as evidenced by the agreement itself, the affidavits filed in evidence, and the actions of the parties themselves since July 21, 1963, that the $250 monthly payments provided for in the settlement agreement were to terminate in the event of the remarriage of plaintiff.

### CONCLUSIONS OF LAW

1. Even though the United States Supreme Court, in Barber v. Barber, 62 U.S. (21 How.) 582, 16 L.Ed. 226 (1859), said:

"We disclaim altogether any jurisdiction in the courts of the United States upon the subject of divorce, or for the allowance of alimony, either as an original proceeding in chancery or as an incident to divorce a vinculo, or to one from bed and board." 62 U.S. at 584.

this Court feels impelled to assume jurisdiction over this matter on the grounds that the dispute here involved is, in effect, simply a contest between two people who have not, for some seven years, been man and wife, over the interpretation of what one contends to be a simple contract between them and the other contends to be a contract which ultimately became merged in a divorce decree entered by the Chancery Court in Mississippi. See Spindel v. Spindel, 283 F. Supp. 797 (E.D.N.Y.1968) and Richie v. Richie, 186 F.Supp. 592 (E.D.N.Y.1960). Since there is diversity of citizenship present, and since the required jurisdictional amount is involved, this Court finds, as a matter of law, that it does have jurisdiction over this matter.

2. The provision of the settlement agreement requiring the defendant to pay the sum of $250 per month to the plaintiff, having been found as a fact by this Court to provide for maintenance and support payments to the plaintiff, said payments, under the law, constitute payments of alimony. Felder v. Felder's Estate, 195 Miss. 326, 13 So.2d 823 (1943); Douglas v. Willcuts, 296 U.S. 1, 56 S.Ct. 59, 80 L.Ed. 3; Weihert v. Weihert, 265 Wis. 438, 61 N.W.2d 890 (1953).

3. Under the law of Mississippi, absent an express agreement to

the contrary, when a divorced wife re-marries, a new status is created which relieves the former husband from further duty to support her, and in that event, the former husband's obligation to pay alimony or support and maintenance ceases. Sides v. Pittman, 167 Miss. 751, 150 So. 211 (1933); East v. Collins, 194 Miss. 281, 12 So.2d 133 (1943); Bridges v. Bridges, 217 So.2d 281 (Miss. 1969).

4. The Court finds, as a matter of law, that the settlement agreement involved herein became merged with the subsequent divorce decree entered by the Chancery Court of Mississippi, and that the $250 monthly payments therein provided for were intended by the parties to, and did in fact, constitute alimony payments to be made by the defendant to the plaintiff for her maintenance and support, and that upon plaintiff's re-marriage on June 21, 1963, defendant was legally relieved of all obligation to continue to make those payments.

5. The Court finds as a matter of law that the defendant is not indebted unto the plaintiff for any sum or sums whatsoever as alleged by the plaintiff, and that plaintiff's suit must be dismissed at her cost.

Judgment will be entered accordingly.