**Deborah CHERRY (Cohen), Hayward H. Pennington, and Alice C. Pennington, his wife**

v.

**Robert Geoffrey CHERRY.**

**Civ. A. No. N–76–563.**

United States District Court, D. Maryland.

Aug. 12, 1977.

Mercedes C. Samborsky, Joppatowne, Md., for plaintiffs.

David B. Lamb, and Patrick J. Moran, Washington, D. C., for defendant.

NORTHROP, Chief Judge.

Deborah Cherry, and her parents, Hayward H. Pennington and Alice C. Pennington, filed this diversity action to redress an alleged breach of a separation agreement between Deborah Cherry and her former husband, Robert Geoffrey Cherry. The separation agreement provided, *inter alia*, that defendant would have custody of their daughter, Nancy, (natural child of defendant whom plaintiff had adopted), that plaintiff, Deborah Cherry, would have visitation rights and that the plaintiffs would convey to defendant their interests in the property located at 4527 Maple Avenue, Bethesda, Maryland. The Cherrys owned the property as tenants by the entireties as to each other and as tenants in common with the Penningtons. The Penningtons alleged that they agreed to convey their interest in the property to defendant because they understood he would remain with his daughter at that residence and that therefore they were third party beneficiaries of the agreement. Plaintiffs alleged that defendant breached the agreement by moving to Oregon with the daughter, thereby vitiating plaintiffs' visitation rights.

Although the complaint does not state explicitly its jurisdictional basis, it appears to be based on diversity jurisdiction under 28 U.S.C. § 1332 (1970). Acting under this assumption, defendant moved to dismiss the

complaint because it failed to satisfy the requisite jurisdictional amount for section 1332. He contended that plaintiffs could not aggregate their individual claims to attain the requisite jurisdictional amount of $10,000. Plaintiffs opposed this motion and, in addition, requested leave to amend their complaint to remove the Penningtons as plaintiffs. The motion for leave to amend explained that the Penningtons had conveyed all their interest in the Bethesda residence to Deborah Cherry.

On April 1, 1977, following oral argument the Court denied defendant's motion to dismiss and instructed plaintiffs that they were entitled to amend their complaint as of right since defendant had not filed an answer. The Court, however, requested that the parties provide further briefing concerning the possible *res judicata* effect of a prior state court judgment involving the separation agreement. In response to this request, plaintiff, Deborah Cherry, filed a memorandum discussing both the *res judicata* issue and the issue of federal jurisdiction over domestic relations cases. Defendant also filed a supplemental memorandum discussing these two issues and asserting failure to satisfy the jurisdictional amount as an additional basis for dismissal. The parties agreed to submit the issues to the Court without oral argument. Since the Court concludes that it has no jurisdiction over this domestic relations case, it need not reach the other issues.

Since the Supreme Court's decision in *Barber v. Barber*, 62 U.S. (21 How.) 582, 16 L.Ed. 226 (1859), the federal courts have been reluctant to entertain domestic relations cases. *See, e. g., Gullo v. Hirst*, 332 F.2d 178 (4th Cir. 1964). In *Barber* the Court stated in *dicta* that the federal courts have no jurisdiction over suits for divorce or the allowance of alimony incident to divorce. Subsequently, in *In re Burrus*, 136 U.S. 586, 10 S.Ct. 850, 34 L.Ed. 500 (1890), the Court indicated in *dicta* that this judicially imposed limitation on federal diversi-

ty jurisdiction might include child custody cases. The Court stated that: "The whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states and not to the laws of the United States." 136 U.S. at 593–594, 10 S.Ct. at 853. The Court, however, stated that it was unnecessary to decide whether federal courts had diversity jurisdiction over child custody cases because the district court, whose ruling was in question, had no diversity jurisdiction at all.[1] Nevertheless, the lower federal courts have interpreted *Burrus* as prohibiting federal jurisdiction in domestic relations cases in general, and child custody cases in particular. For example, in *Delavigne v. Delavigne*, 402 F.Supp. 363, 366 (D.Md.1975), *aff'd*, 530 F.2d 598 (4th Cir. 1976), the Court, citing *Burrus* and *Barber*, stated that domestic relations cases involving husband and wife or parent and child should be litigated in state, not federal, court.

The child custody cases applying *Burrus* often have involved factual situations quite similar to the facts in the present case. In *Hernstadt v. Hernstadt*, 373 F.2d 316 (2d Cir. 1967), the husband requested that the court interpret the provisions in the divorce decree concerning child custody and visitation rights. The court, citing *Burrus*, stated that: "[I]t has been uniformly held that federal courts do not adjudicate cases involving the custody of minors and, *a fortiori*, rights of visitation." *Id.* at 317. Similarly, in *Gargallo v. Gargallo*, 472 F.2d 1219 (6th Cir.), *appeal dismissed*, 414 U.S. 805, 94 S.Ct. 77, 38 L.Ed.2d 41 (1973), the husband alleged that his wife had unlawfully removed his three children from the state. Relying on *Burrus* the court held that the district court properly declined jurisdiction. *Id.* at 1220.

■ Although neither the Constitution nor the statutes governing federal jurisdiction mandate this refusal to entertain domestic relations cases, the reasoning underlying these decisions is clear and well-

---

1. At that time only the federal circuit courts, not the district courts, had diversity jurisdiction. *See* 136 U.S. at 597, 10 S.Ct. 850.

founded. Because state courts traditionally have adjudicated domestic relations cases, they have developed a proficiency and expertise in the area that is almost completely absent in the federal courts. *Solomon v. Solomon*, 516 F.2d 1018, 1025 (3rd Cir. 1975). In addition, this rule respects the special interests of the states in domestic relations matters. Furthermore, the Court is unwilling to increase the workload of this already overburdened Court by ignoring a rule that has existed for over 100 years without any intimation of Congressional disapproval. *Phillips, Nizer, Benjamin, Krim & Ballon v. Rosenstiel*, 490 F.2d 509, 514 (2d Cir. 1973).

Plaintiff has not attempted to disclaim the domestic relations nature of this case. Indeed, in her memorandum she characterizes her suit as an "action for damages for breach of the child visitation provisions of the voluntary separation agreement . . . ." *Plaintiff's Memorandum*, filed May 4, 1977 at 3. Plaintiff, however, has cited several cases that generally support the position that not all domestic relations cases are beyond the jurisdiction of the federal courts. *See Graning v. Graning*, 411 F.Supp. 1028 (S.D.N.Y.1976) (suit for breach of pre-divorce property settlement); *Spindel v. Spindel*, 283 F.Supp. 797 (E.D.N.Y.1968) (suit challenging validity of Mexican divorce decree); *Richie v. Richie*, 186 F.Supp. 592 (E.D.N.Y.1960) (suit to enforce a judgment against husband for failure to make support payments); *Gonzales v. Gonzales*, 74 F.Supp. 883 (E.D.Pa. 1947) (suit to collect past due support payments). Although these cases support plaintiff's position, the Court believes that the greater weight of authority precluding federal jurisdiction over domestic relations cases compels dismissal of this suit. Moreover, the decision of the Second Circuit in *Hernstadt* significantly diminishes the persuasiveness of *Graning, Spindel* and *Richie*, since *Hernstadt* involved facts more similar to the present case and was decided by a higher court in that Circuit.[2]

For the foregoing reasons, it is this 12th day of August, 1977, by the United States District Court for the District of Maryland, ORDERED:

1. That defendant's Motion to Dismiss BE, and the same hereby IS, GRANTED.

2. That the complaint in the above-captioned case BE, and the same hereby IS, DISMISSED.

---

2. In his memorandum defendant also discusses allegations in the complaint that he failed to make payments on the mortgage of the Bethesda residence and other debts incurred jointly with plaintiff. Construing the complaint as a whole, however, the Court concludes that the complaint does not state a claim concerning either of these matters. Although the complaint does state that defendant breached the separation agreement by failing to pay mortgage installments and other bills, the prayer for relief requests only plaintiff's estimate of the damages suffered from the violation of her visitation rights. This construction of the complaint is supported by plaintiff's memorandum in which she states that: "The cause of action herein is the plaintiff's right to contractual damages for the defendant's breach of his responsibility to allow the contractual visitation." *Plaintiff's Memorandum*, filed May 4, 1977 at 4.