**Benjamin H. STEVENS**

v.

**Ronald SLEY and Catherine E. W. Stevens.**

**Civ. A. No. 74–721.**

United States District Court, E. D. Pennsylvania.

Feb. 13, 1976.

Marvin Katz, Philadelphia, Pa., for plaintiff.

Norman R. Bradley, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

BRODERICK, District Judge.

Presently before the Court is the motion of the defendants to dismiss the plaintiff's complaint. The defendant, Ronald Sley, contends that there has been an insufficient service of process as to him and therefore the Court lacks jurisdiction over his person. Mr. Sley also contends that as to him the complaint fails to state a cause of action upon which relief can be granted. Finally, both Mr. Sley and defendant Catherine E. W. Stevens contend that this Court lacks subject matter jurisdiction over the plaintiff's complaint. For the reasons set forth herein, we grant the defendants' motion to dismiss for want of subject matter jurisdiction.[1]

Diversity jurisdiction is alleged pursuant to 28 U.S.C. § 1332. The complaint alleges that the plaintiff, Benjamin H. Stevens, is a resident of Massachusetts and that Ronald Sley and Catherine Stevens are residents of Pennsylvania and that the amount in controversy is in excess of $10,000.00.

Benjamin Stevens and Catherine Stevens were married on February 14, 1952. Marital difficulties arose and the parties separated on December 14, 1970. On February 25, 1972 Mr. and Mrs. Stevens entered into a Post-Nuptial Agreement which settled all financial obligations between the parties, including alimony and child support, as well as custody of their children and the visitation rights of Mr. Stevens. Pursuant to the Agreement, Mr. Stevens agreed to pay Mrs. Stevens alimony totaling $190,000.00 to be paid periodically over a specified period of time, which alimony payments were terminable by the husband upon the remarriage of Mrs. Stevens during the period of alimony payments.[2] Mr. Stevens further agreed to pay to Mrs. Stevens $2,500.00 annually for the support of the couple's four minor children.[3] The Agreement also sets forth the visitation rights of Mr. Stevens in connection with the couple's children.[4] The complaint further alleges that after 1972, and unknown to the plaintiff, Catherine Stevens entered into a common law mar-

---

1. Because we have determined that we must dismiss this action for lack of subject matter jurisdiction, we do not reach the defendants' other grounds advanced in support of their motion to dismiss.

2. Post-Nuptial Agreement, ¶ 5

3. Post-Nuptial Agreement, ¶ 6

4. Post-Nuptial Agreement, ¶ 12; Agreement Regarding Visitation Rights, April 27, 1971.

riage with Ronald Sley, which common law marriage terminated the obligation of the plaintiff, Mr. Stevens, to pay alimony to Catherine Stevens. The complaint also alleges that Ronald Sley and Catherine Stevens have conspired and engaged in a course of conduct detrimental to the welfare and best interests of the children by depriving the children of an adequate education, and by subjecting them to an immoral, inadequate, inappropriate and unstable environment and that the defendants have neglected to take reasonable care of said children. The plaintiff further alleges that Ronald Sley and Catherine Stevens have squandered the alimony and child support paid by the plaintiff pursuant to the Agreement and that Ronald Sley has induced Catherine Stevens to use the alimony and child support payments to finance the personal projects of Mr. Sley, causing irreparable damage to the children. In addition, the complaint alleges that Catherine Stevens has been, and continues to be, an unfit mother and that she repeatedly and continually refuses to abide by the visitation provisions of the Post-Nuptial Agreement.

In his prayer for relief the plaintiff asks this Court to:

1. Issue a declaratory judgment that the provisions for alimony under Paragraph 5 of the Agreement dated February 25, 1972 is terminated because of the common law marriage of defendants.

2. Remove John Andrew Stevens, Richard Randall Stevens and Edith Elizabeth Stevens from the custody of Catherine E. W. Stevens and order them placed in the custody of the plaintiff.

3. Enjoin Ronald Sley and Catherine E. W. Stevens from depriving John Andrew Stevens, Richard Randall Stevens and Edith Elizabeth Stevens of an adequate education, and from further keeping John Andrew Stevens, Richard Randall Stevens and Edith Elizabeth Stevens in an immoral, inadequate, inappropriate and unstable environment.

4. Order Catherine E. W. Stevens to abide by the visitation agreement attached to the Agreement dated February 25, 1972.

5. Order termination of the child support for John Andrew Stevens, Richard Randall Stevens and Edith Elizabeth Stevens provided in the Agreement dated February 25, 1972, which is being squandered by defendants.

6. Grant such other and further relief as may be appropriate, including temporary, preliminary and final restraining orders and injunctions against defendants and damages against defendants for the alimony and child support squandered by them to the date of trial, as well as punitive damages against each defendant in the sum of $1,000,000.[5]

The defendants in their motion to dismiss contend that this action is a "domestic relations" matter over which this Court lacks subject matter jurisdiction. The plaintiff argues that the action against defendant, Catherine Stevens, is a declaratory judgment action based upon the alleged breach by Catherine Stevens of the Post-Nuptial Agreement. The plaintiff argues that the action against Ronald Sley is one for malicious interference by defendant Sley with the Post-Nuptial Agreement. The plaintiff contends that the requisite diversity of citizenship exists as well as the $10,-000.00 jurisdictional amount and that this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. Once subject matter jurisdiction is established the plaintiff contends that the Court has pendent jurisdiction of the ancillary relief sought by him in connection with child custody and visitation rights.

The resolution of the issue as to subject matter jurisdiction is controlled by the Third Circuit's recent opinion in *Solomon v. Solomon*, 516 F.2d 1018 (1975). In *Solomon*, Pennsylvania residents con-

---

5. Plaintiff's Complaint, prayer for relief.

templating divorce executed a separation agreement providing for continuing monthly payments by the husband to the wife for her support. The plaintiff wife filed her complaint in this district court alleging diversity of citizenship and the requisite jurisdictional amount of $10,-000.00. Neither the diversity of the parties nor the jurisdictional amount was questioned by the defendant. The complaint alleged that the defendant husband had defaulted on payments due under the written separation agreement and sought monetary damages for failure to make the support payments as well as specific enforcement of the separation agreement. The defendant admitted in his answer that he had not paid the installments due under the agreement but asserted as an affirmative defense the unclean hands of the plaintiff and her breach of the agreement by not allowing the defendant his visitation rights as provided under the Agreement.[6] Our Circuit Court held that the district court lacked subject matter jurisdiction over the complaint of the wife because of the judicially carved domestic relations exception to Federal court jurisdiction. The Court, after tracing the development of the domestic relations doctrine through a series of United States Supreme Court decisions, stated:

> Our understanding of these cases requires us to conclude that the district court properly refused to exercise jurisdiction over the instant case. The import of the Supreme Court's language in these cases is that the federal courts do not have jurisdiction in domestic relations suits *except* where necessary to the effectuation of prior state court judgments involving the

same matters or where jurisdiction lies by dint of the participation and review of territorial courts. The case at bar cannot be categorized into either narrow exception . . . .

Nor do we accept plaintiff's contention that a divorce decree *without more* removes this case from the arena of domestic relations and permits the intervention of federal courts to adjudicate issues unaffected by that decree. At the core of both parties' contentions is the parent-child relationship. The divorce decree in this case did not sever that relationship. There is no evidence that it either incorporated the terms of the separation agreement or merged with it. The state courts have not rendered any judgment on support payments which requires our invocation of jurisdiction to assure its efficacy. In *Albanese v. Richter*, 161 F.2d 688, 689 (3d Cir. 1947), we disclaimed jurisdiction over the suit of an illegitimate child against his putative father for support and education. That case made clear the fact that the classification of a suit as one in domestic relations does not depend upon the existence, and impliedly the continuation, of a marriage relationship. 516 F.2d at 1024. (Footnotes omitted).

The Circuit Court explained the basis for excluding domestic relations matters from subject matter jurisdiction as follows:

> The domestic relations exception to the jurisdictional powers of federal courts represents an historically engrained limitation upon us. It is true that the rationale upon which it is premised has shifted from conceptions regarding the powers of ancient eccle-

---

**6.** The Agreement also provided that all disputes in connection with the husband's future visitation rights were to be submitted to the Court of Common Pleas of Montgomery County, Pennsylvania for resolution. The husband had obtained an order from that Court in connection with the dispute over his visitation rights under the Agreement. The wife had not obeyed the Court's order and had removed the children from the jurisdiction without the

Court's approval and was declared in contempt. Although the Circuit Court pointed out that under the facts of *Solomon*, any relief which the U. S. district court granted might tend to encourage a feuding couple to play one court system off against the other, it based its decision on the lack of subject matter jurisdiction in connection with domestic relations matters. 516 F.2d at 1025, 1026.

siastical courts, . . . the non-diversity of married couples, and the lack of monetary value of a divorce, . . . to the modern view that state courts have historically decided these matters and have developed both a well-known expertise in these cases and a strong interest in disposing of them.

.    .    .    .    .

Concededly, this judge-made doctrine is not without its critics. But until such time as either Congress or the Supreme Court sees fit to amend or emasculate this exception, we are bound by the precedent of the Supreme Court's language and the weight of federal authority to apply it to the broad area of domestic relations. Its application in this case preserves the sanctity of state court judgments and protects against confusing and complicated piecemeal litigation. Although plaintiff repeatedly stated in open court that she "submitted to the jurisdiction of the" state court, as noted at page 1020 above, she seeks to have the federal court nullify its rulings in this action.

The district court was justified in concluding that it lacked jurisdiction of this case. 516 F.2d 1025, 1026. (Citations and footnotes omitted).

The plaintiff in this case asks the Court to issue a declaratory judgment that the provisions of the Post-Nuptial Agreement are terminated because of the common law marriage of the defendants. This would obviously require a finding that such a relationship exists between Mrs. Stevens and Mr. Sley.

The plaintiff also seeks custody of the children on the basis that Mrs. Stevens is an unfit mother and that the children are being raised in an immoral environment. We are further asked to enforce the visitation provisions of the Post-Nuptial Agreement and order termination of the child support. This requires a determination of issues which historically have been decided by state courts and wherein the state system has developed an expertise in making a determination as to what environment is best for the children. It is obvious that the plaintiff in this action has raised more domestic relations issues than were involved in *Solomon*. It is, therefore, our determination that this Court lacks subject matter jurisdiction in this case. The Court in *Solomon* refused to consider the action before it as a contract action or to sever what could be termed the "financial dispute" portion of the lawsuit as suggested by Judge Gibbons in his strong dissent.[7] We find that such a severance is not possible in this case. The financial dispute between the plaintiff and Mrs. Stevens is bottomed on the domestic relations issues such as (a) the allegation that the alimony payments should terminate because the defendants have entered into a common law marriage; (b) the allegation that the support payments to the children should terminate because they are not being used for the benefit of the children; and (c) the allegation that custody of the children should be awarded to the plaintiff because Mrs. Stevens is an unfit mother and the children are being raised in an immoral environment.

---

7. Judge Gibbons stated in his strong dissenting opinion in *Solomon*:

There is nothing "domestic" about the financial dispute. What defendant appears to be interested in primarily is in rewriting the agreement so as to use the severable provision with respect to visitation as a defense to the suit for the support payments which an affidavit concedes he has withheld since 1969. The district court needs only to look at the face of the agreement to conclude that article 2 is severable. If it is, there will be

no adjudication of visitation rights, with respect to plaintiff's claim, but only a judgment requiring the husband to pay, subject to any appropriate set-off. If, as seems highly unlikely, the court concludes that paragraph 2(g) is not severable, it still will not be called upon to adjudicate visitation rights. It will merely decide that the choice of forum clause is enforceable and dismiss the complaint on the merits on that ground. Thus, the "domestic relations" issue is in this case a phantasm. 516 F.2d at 1030.

Likewise the claim against Ronald Sley is bottomed on similar domestic relations issues. The complaint alleges that Ronald Sley has engaged in a course of conduct detrimental to the welfare of the children, that he has caused great emotional damage to the children, that he has deprived them of an adequate education, and that he has subjected them to an immoral environment. The complaint also alleges that Ronald Sley has conspired with, enticed, induced, and inveigled Mrs. Stevens for the purpose of maliciously interfering with the rights of the children to the support provided them under the Agreement and that he and Mrs. Stevens have squandered the child support and the alimony payments to finance Ronald Sley's personal expenditures, eccentricities and theatrical projects. And in the prayer for relief the Court is asked to enjoin Mr. Sley from continuing such alleged actions, to award damages against him in connection with the alimony and child support payments that have allegedly been squandered, and to award punitive damages in the amount of $1,000,000.00. Such claims would require a determination as to whether Mr. Sley's conduct has been detrimental to the welfare of the children, has caused them emotional damage, has deprived them of an inadequate education, and has subjected them to an immoral environment. The claims against Mr. Sley would likewise require a finding as to whether Mr. Sley had conspired with Mrs. Stevens to squander the support payments provided for in the Post-Nuptial Agreement in order to finance Mr. Sley, with a resulting damage to the children. At the core of these contentions is the welfare and best interest of the children and the parent-child relationship—domestic relations issues.

Accordingly, the following Order is entered:

### ORDER

And now, this 13th day of February, 1976, upon consideration of the defendants' motion to dismiss and the opposition thereto, it is hereby ordered that the defendants' motion is granted and the action of Benjamin H. Stevens against Ronald Sley and Catherine E. W. Stevens is dismissed.