**John H. GILL**

v.

**Kathleen M. GILL.**

**Civ. A. No. 75–3176.**

United States District Court, E. D. Pennsylvania.

April 8, 1976.

John H. Gill, pro se.

Phillip H. Baer, Philadelphia, Pa., for defendant.

## OPINION

DITTER, District Judge.

Attempting to invoke the jurisdiction of this court under alternative diversity of citizenship and civil rights theories, plaintiff seeks to have set aside a state court order awarding custody of his minor daughter to his estranged wife. Defendant has moved to dismiss the complaint on grounds of insufficient service of process, absence of personal and subject matter jurisdiction, failure to state a claim upon which relief can be granted, and failure to comply with applicable rules of procedure. I conclude that for want of subject matter jurisdiction and for failure to state a cognizable claim the complaint must be dismissed.[1]

Taking as true the allegations of the complaint, *Cooper v. Pate,* 378 U.S. 546, 84 S.Ct. 1733, 1734, 12 L.Ed.2d 1030 (1964), and all reasonable inferences deducible therefrom, *Curtis v. Everette,* 489 F.2d 516, 518 (3d Cir. 1973), cert. denied, 416 U.S. 995, 94 S.Ct. 2409, 40 L.Ed.2d 774 (1974),[2] as I must do on a motion to dismiss, it appears that defendant deserted plaintiff on January 27, 1975, taking with her the couple's minor daughter, Karen M. Gill. Plaintiff effected the return of Karen to his home on April 30, 1975.[3] On October 9, 1975, the Honorable James L. Stern, Judge of the Family Divi-

---

1. Inasmuch as I have concluded that defendant's motion may be disposed of on the basis of these grounds alone, I need not address myself to her remaining contentions. *Inpaco, Inc. v. McDonald's Corporation,* 413 F.Supp. 415, Civil Action No. 74–1251 (E.D.Pa., filed Jan. 9, 1976), slip op. at 3.

2. Notwithstanding my recommendation that he secure the services of legal counsel, plaintiff has elected to proceed in this matter pro se.

Heeding the admonition of the Supreme Court in *Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 596, 30 L.Ed.2d 652, 653, reh. denied, 405 U.S. 948, 92 S.Ct. 963, 30 L.Ed.2d 819 (1972), I have accordingly held the allegations of the complaint to less stringent standards than formal pleadings drafted by attorneys.

3. The manner in which Karen's return was accomplished is nowhere discernible in the documents before the court.

sion of the Court of Common Pleas of Philadelphia, entered an order awarding custody of the child to defendant.[4] Plaintiff thereafter instituted the present action, seeking to have this court stay execution of the Common Pleas order, and to entertain a hearing on the merits of his custody petition.

Alleging that he is a citizen of Pennsylvania and his wife a citizen of New Jersey, plaintiff first seeks to maintain this suit pursuant to this court's diversity jurisdiction under 28 U.S.C. § 1332. Inasmuch as the complaint is devoid of any claim of damages, let alone an amount in controversy exceeding the requisite $10,000., jurisdiction does not lie under that statute. *Harms v. Federal Housing Administration,* 256 F.Supp. 757, 760 (D.Md.1966). Had plaintiff sought damages in an amount sufficient to satisfy Section 1332, under the more recent authorities, the fact that the parties remain legally married to each other would not necessarily preclude invocation of this court's diversity jurisdiction.[5] As Judge Weinstein concluded in a remarkable opinion in *Spindel v. Spindel,* 283 F.Supp. 797, 813 E.D.N.Y.1968):

Whatever the ancient doctrine a wife is capable of acquiring a domicile separate from that of her husband; at least to this extent legal equality of the sexes is embodied in the Fourteenth and Nineteenth Amendments. Cf. 42 U.S.C. §§ 2000a et seq. "If there has been an actual rupture of marital relations, [a wife] * * * may acquire a separate domicile of her own even though she was the party at fault. And she may likewise do so if for any reason she is living apart from her husband even though her relations with him are wholly amicable." Restatement 2d, Conflict of Laws § 21, comment d (Proposed Official Draft, Part I, 1967). See also cases collected, id., Reporter's Notes, pp. 111–12; Goodrich and Scoles, Conflict of Laws, pp. 51–53 (4th ed. 1964) ("The more recent authorities now recognize the separate domicile of the wife whenever she in fact makes her home apart from her husband, regardless of her motive or propriety of her conduct.").[6]

Taking a still broader tack, however, and relying upon the statement of the Supreme Court in *In re Burrus,* 136 U.S. 586, 593–94, 10 S.Ct. 850, 853, 34 L.Ed. 500, 503 (1890), that "[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States," [7] defendant would have me eschew

---

**4.** Plaintiff contends that at the close of the hearing on Karen's custody, Judge Stern awarded temporary custody of the child to him and further denied his wife any visitation rights. Plaintiff does not dispute that the final order entered by Judge Stern did indeed award custody to his wife, but does make note of the apparent incongruity of the two decisions.

Although, of course, I express no comment on the alleged inconsistency between Judge Stern's verbal and written orders, I am today directing the clerk of court to send a certified copy of this opinion and its accompanying order to Judge Stern for any consideration of the matter he might deem appropriate.

**5.** In *De La Rama v. De La Rama,* 201 U.S. 303, 307, 26 S.Ct. 485, 486, 50 L.Ed. 765, 767 (1906), the Court, in reversing a *territorial court's* refusal to grant a divorce, spoke of the *regular federal* courts as lacking jurisdiction in such proceedings "by reason of fact that the husband and wife cannot usually be citizens of

different States, so long as the marriage relation continues . . . .."

**6.** *Spindel* involved an action brought by a wife, who was a resident of New Mexico, against her husband, a New York resident, for a declaratory judgment that the Mexican divorce decree he had obtained was invalid and for damages on two tort theories based on defendant's alleged fraud in inducing her to marry and in procuring the divorce. Inasmuch as plaintiff sought damages substantially in excess of $10,-000. on her tort claims, the jurisdictional amount was not at issue. *Spindel v. Spindel,* 283 F.Supp. 797, 812 (E.D.N.Y.1968).

**7.** See also *Barber v. Barber,* 62 U.S. (21 How.) 582, 584, 16 L.Ed. 226, 227 (1859), where the Court said: "We disclaim altogether any jurisdiction in the courts of the United States upon the subject of divorce, or for the allowance of alimony, either as an original proceeding in chancery or as an incident to divorce *a vinculo,* or to one from bed and board."

any consideration of this suit.[8] A survey of cases decided by federal courts on the question of federal jurisdiction in matters of domestic relations yields frequently seemingly inconsistent and occasionally quite puzzling results.[9] Judge Weinstein, after an exhaustive survey and critique of the subject, opted in *Spindel v. Spindel,* supra, for an approach which frankly would render federal courts more hospitable to actions from which those courts historically have abstained on the basis of their domestic relations content.[10] Whatever may recommend itself in Judge Weinstein's approach,[11] it was specifically rejected by the Court of Appeals for this Circuit only last year in *Solomon v. Solomon,* 516 F.2d 1018. There the district court, in a former wife's diversity action for nonsupport, based in contract upon a separation agreement, entered summary judgment in favor of the ex-husband on grounds that federal jurisdiction was lacking.[12] In agreeing with the district court's jurisdictional determination, the majority of the appellate court held that federal courts have jurisdiction in domestic relations suits only where it is necessary to the effectuation of prior state court judgments involving the same matters, or where jurisdiction lies by dint of the participation and review of territorial courts. *Id.* at 1024.[13] With specific reference to the facts before it the *Solomon* court concluded that inasmuch as state litigation between the parties was pending, the threat existed that the feuding couple might play one court system off against another, and since *custody of the couple's children was involved,* the district court properly found that it had no jurisdiction. *Id.* at 1024. Indeed, it has been the unswerving rule in this Circuit that there is no federal diversi-

---

**8.** The *Burrus* case actually involved only the question of the authority of a United States District Court, under the habeas corpus statutes, to make an award of an infant's custody in the absence of diversity jurisdiction. The question of such authority given diversity of citizenship and the requisite jurisdictional amount was expressly reserved. *In re Burrus,* 136 U.S. 586, 597, 10 S.Ct. 850, 854, 34 L.Ed. 500, 514 (1890). The quoted dictum nevertheless has survived and generally been construed to refer to both jurisdictional and legislative competence.

See also *Williams v. North Carolina,* 325 U.S. 226, 233, 65 S.Ct. 1092, 1096–97, 89 L.Ed. 1577, 1583, reh. denied, 325 U.S. 895, 65 S.Ct. 1560, 89 L.Ed. 2006 (1945); *Simms v. Simms,* 175 U.S. 162, 167, 20 S.Ct. 58, 60, 44 L.Ed. 115, 117 (1899).

**9.** See Hart & Wechsler, The Federal Courts and the Federal System 1190 (2d ed. 1973), and cases cited therein.

**10.** Specifically, Judge Weinstein held that federal district courts are not without jurisdiction in all cases which can be labeled as "domestic relations" actions, *Spindel v. Spindel,* note 6 supra, 283 F.Supp. at 804–08, and that such courts need not apply a generalized doctrine of abstention in matrimonial cases, *id.* at 811. See also Vestal & Foster, Implied Limitations on the Diversity Jurisdiction of Federal Courts, 41 Minn.L.Rev. 1, 25 (1956).

**11.** In practical terms, to engraft domestic relations jurisdiction upon federal courts already burdened with burgeoning civil calendars would seem most imprudent. In the same vein, Judge Friendly has observed:

It is beyond the realm of reasonable belief that, in these days of congested dockets, Congress would wish the federal courts to seek to regain territory, even if the cession of 1859 [in *Barber v. Barber,* 62 U.S. (21 How.) 582, 16 L.Ed. 226 (1859)] was unjustified. *Phillips, Nizer,· Benjamin, Krim & Ballon v. Rosenstiel,* 490 F.2d 509, 514 (2d Cir. 1973), quoted with approval in *Armstrong v. Armstrong,* 508 F.2d 348, 350 (1st Cir. 1974). See generally Chief Justice Burger's Year End Report: The Condition of the Judiciary (1975).

**12.** While agreeing that jurisdiction indeed was absent, the majority held that that issue properly should be raised and adjudicated by a motion to dismiss rather than by a summary judgment motion, and accordingly remanded the case for entry of a judgment of dismissal. *Solomon v. Solomon,* 516 F.2d 1018, 1027 (3d Cir. 1975).

**13.** The majority explained that the mere fact that a divorce decree had issued did not remove the case from the sphere of domestic relations and permit intervention by federal courts to adjudicate issues unaffected by the decree. 516 F.2d at 1024. Similarly, the court stated that for purposes of determining federal jurisdiction, the classification of an action as one in domestic relations does not turn on the existence, and, impliedly, the continuation, of a marital relationship. *Id.*

ty jurisdiction in a domestic relations case involving a child. *Albanese v. Richter,* 161 F.2d 688, 689 (3d Cir.), cert. denied, 332 U.S. 782, 68 S.Ct. 49, 92 L.Ed. 365 (1947), cited with approval in *Solomon v. Solomon,* supra at 1024 n.17, and *Magaziner v. Montemuro,* 468 F.2d 782, 787 (3d Cir. 1972).[14] Accordingly, insofar as plaintiff's claim sounds in domestic relations, it cannot be maintained in this court.

Apparently recognizing that he might encounter some rather formidable barriers in pressing this suit as a custody action, plaintiff alternatively seeks to recover for an alleged violation of his civil rights and those of his daughter.[15] Giving a liberal reading to the complaint, plaintiff apparently alleges that his wife and her attorney [16] wrongfully conspired to deprive him of his daughter's custody, and effectuated their scheme by means of perjury, misrepresentations to the state court, and other measures.[17]

Even should the foregoing allegations be deemed to be sufficiently specific for a civil rights action,[18] they would fail to constitute a claim upon which relief could be afforded. At most, the plaintiff is asserting that the wrong decision was reached, although he concedes the appropriate processes were employed.

While it is conceivable that state judicial machinery might be used to deprive a person of his property without due process of law or to deny him the equal protection of the laws, in order to make out such a case under the civil rights act, a plaintiff must show that federally protected rights were denied in state proceedings which were so abused or manipulated that they were in effect a nullity. To hold otherwise would be to make the federal courts the arbiter of the correctness of every state decision. *Bottone v. Lindsley,* 170 F.2d 705, 707 (10th Cir. 1948). See also, *Basista v. Weir,* 340 F.2d 74, 83 (3d Cir. 1965). Neither the civil rights statutes nor the Fourteenth Amendment secure a person against malicious, unfounded claims, the receipt of inadmissible evidence, or erroneous decisions, especially when the laws and courts of the state are available to furnish adequate remedies to an aggrieved individual. See *Curry v. Ragan,* 257 F.2d 449, 450 (5th Cir.), cert. denied, 358 U.S. 851, 79 S.Ct. 78, 3 L.Ed.2d 85, reh. denied, 358 U.S. 914, 79

---

**14.** See generally, *Stevens v. Sley,* 407 F.Supp. 140 (E.D.Pa., filed Feb. 13, 1976); *Wilson v. Wilson,* 128 F.Supp. 88 (D.Mass.1955); *Clifford v. Williams,* 131 F. 100 (C.C.D.Wash.1904).

Indeed, the only case my research has disclosed wherein federal jurisdiction in a child custody hearing was held maintainable—*Abdul-Rahman Omar Adra v. Clift,* 195 F.Supp. 857 (D.Md.1961)—was a fluke. There the wrongful withholding of a minor child from her alien father was held to constitute a tort actionable by the alien under 28 U.S.C. § 1350. The court explicitly rejected the abstention doctrine, notwithstanding the fact that the case involved domestic relations and the alien sought an award of custody of his daughter rather than damages. Whatever the soundness of the court's reasoning may be in terms of the peculiar statute there at issue, it plainly has no application in the matter before me.

Both in his complaint and answer to the motion to dismiss, plaintiff makes repeated reference to a case decided by a federal court sitting in the state of New York in which the custody of two minor children was awarded to their father. He has, unfortunately, failed to supply a name, citation, or civil action number for this case, and my canvas of the most recent publications of the several federal reporting services has failed to turn up anything even vaguely resembling such a decision.

**15.** In his answer to defendant's motion, he in fact characterizes this claim as his "main jurisdiction."

**16.** Plaintiff neither named defendant's attorney as a co-defendant, nor has he moved to so join him.

**17.** Plaintiff makes mention of certain mental tests ordered by Judge Stern, and of the institution of another suit against him.

**18.** It is the well-settled rule in this Circuit that civil rights actions must be specifically pleaded in order to withstand a motion to dismiss, *Kauffman v. Moss,* 420 F.2d 1270, 1275 & n.13 (3d Cir.), cert. denied, 400 U.S. 846, 91 S.Ct. 93, 27 L.Ed.2d 84 (1970); *Negrich v. Hohn,* 379 F.2d 213, 215 (3d Cir. 1967), and that broad conclusory allegations, unsupported by specific factual contentions, are insufficient to state a claim upon which relief may be granted, *id.*

**1158**

S.Ct. 238, 3 L.Ed.2d 235 (1958); *Bradford v. Lefkowitz,* 240 F.Supp. 969, 977 (S.D.N.Y. 1965).[19] Plaintiff's challenges to the Pennsylvania proceedings must be addressed to the courts of that Commonwealth, which both at the trial[20] and appellate level can afford whatever relief to which he may be entitled.

For the reasons expressed above, defendant's motion to dismiss the complaint will be granted.

---

**19.** See also *Hahn v. Sargent,* 388 F.Supp. 445, 452 (D.Mass.), aff'd. 523 F.2d 461 (1st Cir. 1975); *Shakespeare v. Wilson,* 40 F.R.D. 500, 504 (S.D.Cal.1966); cf. *Paskaly v. Seale,* 506 F.2d 1209, 1212 (9th Cir. 1974).

**20.** By its October 9, 1975, order, the Common Pleas court specifically provided that the suit would be relisted in the event the parties were unable to agree upon the "liberal visitation rights."