Norma HICKEY and Julian Sheimo, for themselves and a class of those similarly situated, Plaintiffs-Appellants,

v.

Edward T. DUFFY, Director of the Illinois Department of Public Aid, and the Illinois Department of Public Aid, Defendants-Appellees.

No. 86–2941.

United States Court of Appeals,
Seventh Circuit.

Argued May 27, 1987.

Decided Aug. 24, 1987.

Jerry Brask, Prairie State Legal Services, Wheaton, Ill., for plaintiffs-appellants.

James C. Stevens, Sp. Atty. Gen. Office, Ill. Atty. Gen.'s Office, Chicago, Ill., for defendants-appellees.

Before WOOD, FLAUM, and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

■ When a child of separated parents receives welfare benefits under the program of Aid to Families with Dependent Children (AFDC), the state obtains the right to any child support payments the non-custodial parent owes to the custodial parent. See *Bowen v. Gilliard,* — U.S. ——, 107 S.Ct. 3008, 3012–14, 3018 n. 19, 97 L.Ed.2d 485 (1987). This litigation, filed in state court to determine whether the obligation to pay child support may be established after the state has made the welfare payments, landed in a jurisdictional swamp when the state removed it to federal court. There are so many problems that our principal challenge is selecting the ground on which to eject the case from federal court.

I

Norma Hickey and Julian Sheimo are the parents of children who have received AFDC benefits. Both separated from their spouses before divorce, and both ultimately gave custody of their children to their spouses. Both obtained final decrees of divorce in courts of Illinois. Sheimo's decree requires him to make child support payments prospectively, but not for the pre-divorce period during which his former wife Dolores, with custody of their four children, received AFDC benefits. Hickey's decree does not require her to make payments for the support of her child, now in the custody of her former husband William, who has received AFDC since the divorce. The Illinois Department of Public Aid filed petitions to intervene in both divorce proceedings and to modify each non-custodial parent's child support obligations. The Department asked each judge to determine the non-custodial parent's support obligations for the period during which the state furnished AFDC benefits. Each parent filed an answer contending that the Department's request for retroactive support is barred by state and federal law.

Hickey and Sheimo also filed a class action before still a third judge of Illinois.

Seeking to represent the class of divorced, non-custodial parents being pursued by the Department for retroactive support, Hickey and Sheimo sought declaratory and injunctive relief based on state and federal law. Their claim under state law is that the Marriage and Dissolution of Marriage Act, Ill.Rev.Stat. ch. 40 §§ 510(a) and 511, prohibits retroactive adjustments of support obligations. The Department replies that Ill.Rev.Stat. ch. 23 § 10–10 permits welfare officials to intervene in divorce cases to obtain "the recovery of aid granted during the period such support was not provided, or both for the obtainment of support and the recovery of the aid provided." The Department believes that § 10–10 prevails over §§ 510(a) and 511.

The only federal claim plaintiffs now pursue depends on the interaction of several parts of the AFDC statute and 42 U.S.C. § 1983. States participating in the AFDC program must recoup expenditures by pursuing non-custodial parents. The basic obligation appears in 42 U.S.C. § 602(a)(26):

> [The state's plan must] provide that, as a condition of eligibility for aid, each applicant or recipient will be required—
>
> > (A) to assign the State any rights to support from any other person such applicant may have (i) in his own behalf or on behalf of any other family member for whom the applicant is applying for or receiving aid, and (ii) which have accrued at the time such assignment is executed....

Each participating state also must have "a plan approved under Part D of this subchapter and operate[ ] a child support program in substantial compliance with such plan". 42 U.S.C. § 602(a)(27). One portion of Part D, 42 U.S.C. § 656(a), provides:

> (1) The support rights assigned to the State under section 602(a)(26) of this title ... shall constitute an obligation owed to such State by the individual responsible for providing such support. Such obligation shall be deemed for collection purposes to be collectible under all applicable State and local processes.

(2) The amount of such obligation shall be—

> (A) the amount specified in a court order which covers the assigned support rights, or
>
> (B) if there is no court order, an amount determined by the State in accordance with a formula approved by the Secretary....

Hickey and Sheimo contend that the Department needs a "court order" under § 656(a)(2)(A), for the state does not have an approved "formula", and, because of § 656(a)(1), may not collect more than the amount specified in the court order. But because of state law, Hickey and Sheimo submit, the Department cannot get a court order. Moreover, they insist, § 602(a)(26)(A)(ii) limits any obligation to sums "which have accrued" when the assignment is "executed"; when the assignment arises automatically because of the custodial parent's application for AFDC benefits, the imputed assignment may cover only support obligations that had "accrued" at the time the AFDC benefits were received; and according to Hickey and Sheimo, the obligation to provide support "accrues" in Illinois only when fixed by court order. *Voila!* No court order at the time of the payments, no obligation for the non-custodial spouse. And although neither § 602 nor § 656 provides for judicial review of the federal claim, Hickey and Sheimo turn to 42 U.S.C. § 1983, which as construed in *Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), supplies a right of action against state officials who do not comply with federal statutes. *Thiboutot,* like this case, involves the AFDC statute.

■ Before the state court could act on the class action, the Department removed the case to federal court under 28 U.S.C. § 1441(b), which permits the defendant to remove any case "of which the district courts have original jurisdiction founded on a claim or right arising under the ... laws of the United States". According to the Department, the class action arose under a law of the United States, so that the district court would have had original jurisdiction under 28 U.S.C. § 1331. The district

court quickly recognized, however, that the claim based on the Marriage and Dissolution of Marriage Act sought relief against a state government based on state law. A federal court may not grant such relief. *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (*Pennhurst II*). The district court remanded the claim based on Illinois law to state court, purportedly on the authority of § 1441(c), which states:

> Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise nonremovable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction.

■ The partial remand was improvident. Section 1441(c) deals with "separate and independent" claims for relief, and the class action contained only one "claim for relief". The plaintiffs wanted to stop the Department from obtaining retroactive support payments. The complaint contained several legal arguments that might support such relief, but a distinct legal argument is not a separate "claim for relief". *American Fire & Casualty Co. v. Finn,* 341 U.S. 6, 12–14, 71 S.Ct. 534, 539–40, 95 L.Ed. 702 (1951). If Hickey and Sheimo had filed a suit under the Marriage and Dissolution of Marriage Act in one court and a suit under the AFDC statute in another, whichever first went to judgment would preclude litigation of the other because of principles of claim preclusion (res judicata). See, e.g., *American National Bank & Trust Co. v. Chicago,* 826 F.2d 1547, 1550–51 (7th Cir.1987) (Illinois law); *Button v. Harden,* 814 F.2d 382 (7th Cir.1987) (same); *Frier v. Vandalia,* 770 F.2d 699 (7th Cir.1985) (same). Cf. *Migra v. Warren City School District,* 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984) (interaction of Ohio law and § 1983). Moreover, state and federal claims here are not "independent" even if they are "separate"; part of

the plaintiffs' argument under federal law depends on the proposition that support obligations do not "accrue" under Illinois law until fixed by court order. The remand of a single *theory* of relief in a case with only one *claim* for relief not only was unauthorized but also created a distinct possibility that the court would need to determine an abstract issue of federal law without being able to consider an integral issue of state law. But no one complained.

With the remand order, the issues were divided among four judges. Hickey and Sheimo were defending the state's petitions in their divorce cases, a third state judge had the arguments just remanded by the district judge, and the district judge had the claims based on the AFDC statute. At this point a modicum of common sense prevailed and the three state proceedings were consolidated before a single judge. Unfortunately, the state judge decided to sit tight until the district court decided the federal issues—unfortunate, because the federal issues cannot readily be decided in advance of the state issues.

The next step should have been to act on the request in plaintiffs' complaint to be representatives of a class. See Fed.R. Civ.P. 23(c). The district court ignored that request, however, and granted summary judgment for the defendants on the plaintiffs' federal claims. He concluded that § 656(a) requires a court order, but that no principle of federal law limits this order to prospective relief. Section 602(a)(26) requires the state to obtain an assignment of any rights the recipient of welfare "may have", and the court treated this as a reference to rights obtained in the future. The "accrued" language, the court implicitly concluded, means only that the facts giving rise to the right of support have taken place; on this reading, a right to support "accrues" each month the non-custodial parent does not provide support despite having the wherewithal to do so. This treatment has several practical benefits, the greatest being that it removes any incentive the parents may have to postpone the effective date of their divorce in an attempt to minimize the state's ability to recoup its welfare payments. The federal statute is supposed to ensure that when the parents have enough income between them to provide for the children's support, they do so rather than pass the burden to the state. Yet the parents rarely have any reason to provide formally for support during the period before the final decree; the state will take the money, so that the custodial parent is no better off and the non-custodial parent is worse off. If the right to support does not "accrue" until embodied in a judicial decree, the family as a group may take advantage of the AFDC payments even if it could have supported the children. The non-custodial parent then can pass wealth to the custodial parent in a property settlement, avoiding the state's entitlement to recoup. The state seeks retroactive adjustments so that it and the federal government do not end up supporting the children of families that do not need welfare.

## II

A federal district court has decided a federal *issue* in cases pending in the courts of Illinois. The issue is dispositive only if the non-custodial parents have (and had) the resources to pay child support during the time in question, and only if state law allows the retroactive adjustment of support obligations. We have no idea whether a state court would alter the plaintiffs' obligations, and without such an alteration the federal issue is abstract. Courts properly avoid disposing of abstract questions of law. One or more obstacles should have led the district court to refrain from deciding the merits. Consider this list of difficulties:

■ 1. There is first of all a problem with appellate jurisdiction. The district court did not act on the complainant's request to certify a class. Rule 23(c) unambiguously requires that the court certify (or decline to certify) the class before acting on the merits, and district courts must comply with Rule 23(c). E.g., *Premier Electrical Construction Co. v. National Electrical Contractors Ass'n, Inc.*, 814 F.2d 358, 363 (7th Cir.1987) (collecting

cases). The failure to act on a motion to certify the class also may deprive the district court's disposition of "finality" and prevent an appeal. *Glidden v. Chromalloy American Corp.*, 808 F.2d 621 (7th Cir.1986). The district court in *Glidden* stated on the record that it would certify the class after learning the results of the appeal on the merits; we held that this simply made the order non-final and non-appealable. Our case, however, has an order that is "final". See *Clift v. UAW*, 818 F.2d 623, 626 (7th Cir.1987); *Gomez v. Illinois State Board of Education*, 811 F.2d 1030, 1034 n. 1 (7th Cir.1987). The district court believes that this litigation is over, which makes the order final. If a court erroneously grants summary judgment, that is equivalent to refusing to hold a necessary trial; although the trial should have been held, the need to hold one in the future (after a remand) does not sap the order of finality. So here. The plaintiffs' disregard of their request for class certification does not resolve that component of the case, because Rule 23(e) prevents plaintiffs' terminating a class suit unilaterally; see also *Glidden*, 808 F.2d at 624–28. So there may need to be future proceedings to wrap up the class aspects of the case. The entry of the existing judgment was the last thing the district judge planned to do, however, which means that we have jurisdiction.

2. Because the case has not been certified as a class action, however, only Norma Hickey and Julian Sheimo are before the court. *Board of School Commissioners v. Jacobs*, 420 U.S. 128, 130, 95 S.Ct. 848, 43 L.Ed.2d 74 (1975). Both have litigation pending in state court, so that 28 U.S.C. § 2283 apparently prevents the entry of an injunction. This statute provides:

> A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

It does not apply if another act of Congress "expressly" authorizes injunctive relief, and according to *Mitchum v. Foster*, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705

(1972), § 1983 is such a statute. But *Mitchum* considered only injunctions to halt violations of the Constitution, situations in which the state litigation was itself unconstitutional. The Court has never considered the effect of *Mitchum* on § 1983 when the party urges that a federal statute preempts state law.

3. Moreover, because the state is the moving party in the state litigation, and the recovery of support payments is an important objective of state government, *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and related cases prevent the award of federal relief that would interfere with the completion of the state proceedings. The Supreme Court has held that a state may waive the protection afforded by *Younger*, see *Ohio Bureau of Employment Services v. Hodory*, 431 U.S. 471, 477–80, 97 S.Ct. 1898, 1902–04, 52 L.Ed.2d 513 (1977), but has not decided whether a state forfeits the benefits of the rule by ignoring it, as the Department has done. Cf. *Granberry v. Greer*, —— U.S. ——, 107 S.Ct. 1671, 95 L.Ed.2d 119 (1987).

4. The plaintiffs' complaint may be unripe—perhaps so unripe that there is no case or controversy within the meaning of Article III. The court need not decide anything about the meaning of the AFDC statute unless plaintiffs' financial circumstances and the law of Illinois permit a retroactive increase in their support obligations. Yet the district court did not find that Hickey and Sheimo are likely to lose on their state-law arguments, so the district court's opinion may be advisory. *Adams v. Indiana*, 795 F.2d 27, 30 (7th Cir.1986). On the other hand, the existence of a state-law obstacle to success does not always show that there is no case or controversy. *Larson v. Valente*, 456 U.S. 228, 238–43, 102 S.Ct. 1673, 1680–82, 72 L.Ed.2d 33 (1982).

5. The "domestic relations exception" to federal jurisdiction depends on a belief that questions of family law should be settled in state court. *Barber v. Barber*, 62 U.S. (21 How.) 582, 584, 16 L.Ed. 226 (1859); *Dragan v. Miller*, 679 F.2d 712 (7th Cir.1982); Lea Brilmayer, *An Introduction to Juris-*

*diction in the American Federal System* 344–49 (1986). Although the exception deals only with the diversity jurisdiction, the principles behind the exception suggest that a federal court should construe narrowly any federal question jurisdiction that it may possess, when the identical question is pending before the state court with jurisdiction of family law. Cf. *Lynk v. LaPorte Superior Court No. 2,* 789 F.2d 554, 558–59 (7th Cir.1986).

6. A federal court may construe the AFDC statute, in an independent action, only if that statute creates a right to relief. *Thiboutot* holds that § 1983 may be used to enforce statutory rights, but there must first be a statutory right. See *Wright v. Roanoke Redevelopment and Housing Authority,* —— U.S. ——, 107 S.Ct. 766, 770, 93 L.Ed.2d 781 (1987); *Pennhurst State School & Hospital v. Halderman,* 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981) (*Pennhurst I*). The portions of the AFDC statute involved in this case oblige the state to recoup welfare out of support payments. It is far from clear that the statute creates any entitlements in *favor* of the parent owing support, and without such a substantive entitlement there is also no enforceable right that can be enforced under § 1983. See *Edwards v. District of Columbia,* 821 F.2d 651, 654–62 (D.C.Cir. 1987).

■ 7. Even if the AFDC statute creates enforceable rights, these must be the sort of rights that would have supported jurisdiction in the district court in the first instance. Otherwise the case could not be removed from state court. Hickey and Sheimo want to use the AFDC act as a *defense* to the state's application for increased support payments. The existence of a federal defense to a claim arising under state law does not permit a party to remove the litigation. See *Johnson v. Mississippi,* 421 U.S. 213, 95 S.Ct. 1591, 44 L.Ed.2d 121 (1975); *Wisconsin v. Glick,* 782 F.2d 670 (7th Cir.1986); 28 U.S.C. § 1443(1). Pleading the defense as a separate claim and seeking a declaratory judgment are the same thing, and a suit seeking a declaratory judgment on the basis of

a federal defense therefore also is not removable. *Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 15–22, 103 S.Ct. 2841, 2849–53, 77 L.Ed.2d 420 (1983); *Caterpillar Inc. v. Williams,* —— U.S. ——, 107 S.Ct. 2425, 2430, 96 L.Ed.2d 318 (1987); *Illinois v. General Electric Co.,* 683 F.2d 206 (7th Cir.1982). Only the request for an injunction is the sort of affirmative federal claim that would have supported original federal jurisdiction. See *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96 n. 14, 103 S.Ct. 2890, 2899 n. 14, 77 L.Ed.2d 490 (1983). That request, however, simply highlights the problem under the Anti-Injunction Act, 28 U.S.C. § 2283. If the only way to support removal is to request a remedy that the court may not supply, perhaps the case is not removable at all.

■ These difficulties come from the nature of this case. Hickey and Sheimo have ongoing state litigation in which federal law may give them a defense. They want to litigate their defense in a separate lawsuit, and the state decided that the federal rather than the state courts should entertain the federal defense. Yet Congress has repeatedly considered and repeatedly rejected any general right of federal defense removal. See the discussion in *Johnson* and, e.g., *Greenwood v. Peacock,* 384 U.S. 808, 86 S.Ct. 1800, 16 L.Ed.2d 944 (1966). Arguments based on federal law pertinent to the disposition of cases pending in state court must be presented to and resolved in state court. The Anti-Injunction Act, the *Younger* doctrine, the limitations on federal defense removal under § 1443, and the doctrines of preclusion discussed in *Migra* and, e.g., *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982), and *Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), all ensure that the state court with jurisdiction of the case resolves the issues in it, including defenses based on federal law. One case in one court is enough. Hickey and Sheimo tried to evade this principle by filing a separate lawsuit; the state compounded things by removing the case; the district court's partial remand aggrava-

ted matters. We conclude that the case was not properly removed.

## III

The plaintiffs' logic is simple enough. They claim the aid of a federal statute. Under *Thiboutot* they are entitled to use § 1983 to vindicate statutory entitlements impaired by state action—here, the Department's suits in state court. Thus the case states a federal claim that could have been filed in the district court under § 1331 and was therefore properly removed. *Younger* goes by the boards because the state failed to invoke it; § 2283 is inapplicable both because § 1983 supports the claim (which under *Mitchum* means that there is "express" authorization to enjoin the state case) and because the state removed the case. If the state wants a federal court's views, plaintiffs insist, the federal courts should not turn the state away.

Things are not so simple. Removal presents questions of federal subject matter jurisdiction, which may (even must) be raised at any time. The state's belief that a federal court ought to settle the AFDC question does not supply federal jurisdiction. The Anti-Injunction Act is less clearly a "jurisdictional" bar, but it enforces principles of state-federal relations that a court should not casually neglect.

The case turns on the Anti-Injunction Act. As a request for a declaratory judgment, the case is not removable, for reasons we have explained. If, because of § 2283, the plaintiffs cannot obtain an injunction, then the complaint should be treated as if it contained only a request for a declaratory judgment. A party should not be able to obtain federal jurisdiction by adding, to a complaint that does not establish such jurisdiction, a request for a remedy the court is forbidden to give. If § 2283 bars injunctive relief, the case stands revealed as an anticipatory federal defense to the state suit, which belongs in state court. It belongs there not only because of the limits on § 1441(b) but also because a defense need never be resolved unless the plaintiff has a good claim, which the Department may or may not have. The set of related legal issues should be decided together, lest the disposition of an isolated defense turn out to be advisory.

The Anti-Injunction Act forbids injunctions against ongoing state litigation, which is what the plaintiffs want. True, the statute allows an injunction when "expressly authorized by Act of Congress", and *Mitchum* holds that § 1983 is such an act. But the rationale of *Mitchum* is limited to violations of the Constitution for which § 1983 supplies a remedy, and then only when the state litigation is itself the violation of the Constitution.

For many years the Supreme Court held that a federal court may enjoin litigation in state courts that is baseless, oppressive, and designed to hinder or tax the exercise of a constitutional right. *Dombrowski v. Pfister*, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965), is the most famous of these cases. Lower federal courts began to enjoin substantial numbers of such cases, much as if § 2283 no longer existed. *Younger* called a halt to these injunctions, pointing out that an injunction should issue only when the injury is irreparable. If the state court is willing to entertain the legal argument, then the injury is unlikely to be irreparable; whether in state or federal court, the person aggrieved by the state's action must make a legal presentation to a judge, and the selection of a court does not make enough difference—given both considerations of comity among sovereigns and the stringent definition of "irreparable" injury—to justify a federal injunction against the state case. See also, e.g., *Pennzoil Co. v. Texaco, Inc.*, —— U.S. ——, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987). *Younger* did not overturn the older principle that a federal court may enjoin the state proceeding when the state's law is "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it." 401 U.S. at 53–54, 91 S.Ct. at 754–55, quoting from *Watson v. Buck*, 313 U.S. 387, 402, 61 S.Ct. 962, 967, 85 L.Ed. 1416 (1941). When the very institution of the state prosecution

shows disregard for federal law, when the costs of defending against the state prosecution are the penalty for exercising federal rights, a federal court may protect the federal interests.

The Supreme Court saw *Mitchum* as presenting the question whether even this limited office for the injunction could exist in light of § 2283. 407 U.S. at 229–31, 92 S.Ct. at 2155. The Court traced earlier decisions construing the "expressly authorized" exception to § 2283 and concluded that the statute need not refer to either § 2283 or injunctions against litigation in state court. Instead, the Court held, a statute may "expressly authorize[ ]" an injunction if it "created a specific and uniquely federal right or remedy ... that could be frustrated if the federal court were not empowered to enjoin a state court proceeding" (407 U.S. at 237, 92 S.Ct. at 2159); in other words, if "an Act of Congress, clearly creating a federal right or remedy enforceable in a federal court of equity, could be given its intended scope only by the stay of a state court proceeding", then the federal court could enjoin the state case. *Id.* at 238, 92 S.Ct. at 2160. See also *Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 97 S.Ct. 2881, 53 L.Ed.2d 1009 (1977) (in a number of separate opinions a majority of the Justices, applying the rationale of *Mitchum*, holds that the antitrust laws expressly authorize injunctions against state cases if and only if the state litigation is itself the violation of the antitrust laws to be restrained).

Section 1983, § 1 of the Civil Rights Act of 1871, met the Court's test in *Mitchum* because it is "an important part of the basic alteration in our federal system wrought in the Reconstruction era" (407 U.S. at 238, 92 S.Ct. at 2160). The Court discussed legislative history of § 1983 dealing with the deprivation of constitutional rights in state courts. It summed up: "The very purpose of § 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights—to protect the people from unconstitutional action under color of state law, 'whether that action be executive, legislative, or judicial.'" *Id.* at 242, 92 S.Ct.

at 2162. The Court's treatment in *Mitchum* of the "expressly authorized" exception has drawn criticism, see David P. Currie, *Federal Courts* 701–05 (3d ed. 1982); Paul M. Bator, Paul B. Mishkin, David Shapiro & Herbert Wechsler, *Hart & Wechsler's The Federal Courts and the Federal System* 1247–50 (2d ed. 1973); Martin H. Redish, *The Anti- Injunction Statute Reconsidered*, 44 U.Chi.L.Rev. 717, 733–39 (1977), because it reads "expressly" out of § 2283. It imputes purposes to the legislature and exalts these over language and structure, a maneuver that the Court more recently has denigrated. E.g., *Rodriguez v. United States*, — U.S. —, 107 S.Ct. 1391, 1393, 94 L.Ed.2d 533 (1987). Even on its own terms, however, *Mitchum* is concerned with the power of federal courts to vindicate the Constitution. The great shift of power in the aftermath of the Civil War had nothing to do with welfare statutes. Federal statutes had been binding under the Supremacy Clause from the start.

Section 1983 established a remedy for state officials' violations of law as well as violations of the Constitution, but it did not create an opportunity to litigate these claims in federal court. The jurisdictional provisions of the Civil Rights Act of 1871, now found in 28 U.S.C. § 1343, were limited to claims "secured by the Constitution". See § 1343(a)(3). These provisions do not give the federal courts jurisdiction of § 1983 actions based on federal welfare laws. See *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979). So when § 1983 was enacted, as when *Mitchum* was decided, the function of § 1983 could be accomplished whether or not federal courts could enjoin state litigation that threatened to violate federal statutory rights. Not until 1976, when Congress eliminated the amount-in-controversy requirement from 28 U.S.C. § 1331, the statute granting general federal-question jurisdiction, could anyone contemplate bringing a § 1983 suit in federal court to interpret the AFDC statute. (Neither Hickey nor Sheimo has alleged that his case is worth more than $10,000, and the claims of class members may not

be aggregated. *Zahn v. International Paper Co.*, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973).) Section 1983 did not provide a remedy in statutory cases until *Thiboutot*, decided in 1980. So until 1976 the sort of claim Hickey and Sheimo now pursue could be raised only in state court, and until 1980 it was unlikely to get anywhere in federal court even if raised. The argument the Court advanced in *Mitchum* —an argument based on the drafters' purposes and expectations rather than the language or structure of the statute—cannot be made when the claim is based on a federal statute rather than the Constitution. Even today few federal statutes create the kind of right the Court addressed in *Mitchum:* a right not to be the subject of litigation the defense of which imposes costs. Hickey and Sheimo do not contend that the Department's intervention in their divorce cases itself violates the AFDC act, or that the expense of defending against the state's petitions violates the AFDC act.

■ More, if § 1983 "expressly authorize[s]" injunctions against state proceedings on the basis of federal statutes, then we must confront the irony that the less Congress has authorized, the more its nondecision displaces state courts. *Thiboutot* treats § 1983 as a residual enforcement device. When Congress creates a right against state officials, § 1983 supplies a remedy. When Congress creates the remedy as well as the right, § 1983 is inapplicable. See *Middlesex County Sewerage Authority v. National Sea Clammers Ass'n*, 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981). So if Congress had created an express statutory right of action in favor of non-custodial parents to enforce 42 U.S.C. §§ 602(a)(26) and 656(a)(1), Hickey and Sheimo would have been bound by the terms of (and limitations on) the express right of action. But unless that (hypothetical) express right of action *also* "expressly authorized" an injunction against state litigation, Hickey and Sheimo could not have obtained an injunction in federal court. For example, the labor laws not only contain express rights of action but also preempt much state law, but this does not authorize injunctions against state courts. *Atlantic Coast Line R.R. v. Locomotive Engineers*, 398 U.S. 281, 90 S.Ct. 1739, 26

L.Ed.2d 234 (1970). It would be topsy-turvy if, when the federal right in question is held in such slight regard that Congress neglects to provide for its enforcement, the remedies include injunctions against litigation, while if Congress carefully establishes a remedial scheme injunctions are unavailable.

■ For all of this we cannot deny the beguiling logic of plaintiffs' position: as a result of *Thiboutot*, their suit proceeds under § 1983; as a result of *Mitchum*, § 1983 authorizes injunctions against litigation in state courts; Q.E.D. The logic of a legal argument should not dissuade a court from revisiting the language and structure of the statutes in question and reviewing the rationale (and the limits) of the earlier cases. *Justices of Boston Municipal Court v. Lydon*, 466 U.S. 294, 313, 104 S.Ct. 1805, 1815, 80 L.Ed.2d 311 (1984). Law cannot be reduced to a series of syllogisms. A formulaic statement of the premises diverts attention from the limits on and qualifications of legal principles. Unless courts continually check back with the sources of their authority, the process of interpretation can become a rumor chain. Tiny variations at each retelling cascade, until the tale is unrecognizable to its originator. As we are supposed to enforce the *statutes* of the United States, and not the glosses on those statutes, we must take care that the judicial process does not contribute to the distortion of meaning. Justice Scalia made the point:

The Board's approach is the product of a familiar phenomenon. Once having succeeded ... in expanding the scope of a statute beyond a reasonable interpretation of its language, the emboldened agency presses the rationale of that expansion to the limits of its logic. And the Court, having already sanctioned a point of departure that is genuinely not to be found within the language of the statute, finds itself cut off from that authoritative source of the law, and ends up construing not the statute but its own construction. Applied to an erroneous point of departure, the logical reasoning that is ordinarily the mechanism of judi-

cial adherence to the rule of law perversely carries the Court further and further from the meaning of the statute. Some distance down that path, however, there comes a point at which a later incremental step, again rational in itself, leads to a result so far removed from the statute that obedience to the text must overcome fidelity to logic.

*NLRB v. Electrical Workers,* — U.S. ——, 107 S.Ct. 2002, 2016, 95 L.Ed.2d 557 (1987) (concurring). Obedience to the text of § 2283 requires us to demand "express" authorization for a federal court to enjoin ongoing state proceedings; obedience to *Mitchum* requires us to hold that § 1983 supplies that authorization for constitutional claims, but it does not demand such a holding for statutory claims. As we have explained, neither the purpose nor the history of § 1983 authorizes such a treatment, given that statutory claims of the sort Hickey and Sheimo press could not be entertained in any federal court until 1976 or 1980, more than a century after Congress enacted § 1983. Amendments to § 1331 in 1976 should not be taken to alter fundamentally the relation between state and federal courts, and congressional silence (the key to *Thiboutot*) should not supply greater authorization to enjoin than does express congressional action—yet both would occur if we followed the combination of *Mitchum* and *Thiboutot* to the limit of its logic. We hold that § 1983 does not "expressly authorize" injunctions, based on federal statutes, against litigation in state courts.

### IV

This leaves the question whether § 2283 contains the sort of rule a court may invoke on its own. No one asked us to remand this case to state court. The statute limits remedies rather than jurisdiction, which suggests that the parties' failure to raise the point surrenders it. The Supreme Court has not held that § 2283 affects the subject matter jurisdiction of the courts. Yet § 2283 is kin to the exhaustion rule in collateral attacks, which, according to *Granberry,* may be enforced even though the state overlooked the point. Like the exhaustion requirement, § 2283 establishes the appropriate relation between state and federal courts. It protects the federal courts from certain kinds of litigation as much as it protects the state courts from federal interference.

*Granberry* held that a federal court should exercise discretion when deciding whether to dismiss (for failure to exhaust) a case all parties would like to see litigated in federal court. The Court suggested that cases with lopsided arguments might be decided on the merits, while more difficult cases should be dismissed. An exercise of discretion along these lines leads to the dismissal of our case. For the reasons we explained in Parts I and II, it is not possible to render a confident decision on the application of 42 U.S.C. §§ 602(a)(26) and 656(a) to Hickey and Sheimo without knowing whether the law of Illinois permits the remedy the Department seeks. Unless state law permits the Department to obtain retroactive payments of support, and the plaintiffs have the means to justify an award of additional support, it is unnecessary to reach the federal defense. And the federal statute uses a word—"accrued"—that apparently takes its meaning from state law. The district court's disquisition on the AFDC statute may turn out to be unnecessary or ill-advised, depending on how things turn out in state court.

The course of proceedings in this case demonstrates why, when a federal court abstains to await clarification of state law, it does not resolve the federal issue until the state proceeding is over. The sequence here has been reversed, which may have led to wasted motion, an inaccurate understanding of what rights to support have "accrued", and even an advisory opinion. These are the kinds of risks against which federal courts should protect themselves, even if the parties to the case do not help.

The judgment of the district court is vacated, and the case is remanded with instructions to remand all proceedings to the Circuit Court for the 18th Judicial Circuit, DuPage County, Illinois. No costs.

FLAUM, Circuit Judge, concurring in the judgment.

I agree with the majority's conclusion that this litigation belongs in state court. I disagree, however, with the majority's rationale: that *Mitchum v. Foster*, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972), which allows a federal court to enjoin state proceedings when the federal suit is brought under § 1983, applies only when the suit is based on a violation of the Constitution and not when the suit is based on the violation of a federal statute. The majority offers no authority for this innovative and troubling proposition other than its own examination of the history and purpose of § 1983, and I have been able to find none. I would therefore accept the proposition, urged by both parties in this case, that the Anti-Injunction Act is not applicable to this case in light of *Mitchum.* Nevertheless, in my view, the majority's remand of this case to state court is appropriate. Even assuming that the federal statutory claim remaining in the case was ripe for decision (which is unclear, as the majority points out), the district court should have abstained from deciding the federal issue.

"The various types of abstention are not rigid pigeon-holes into which federal courts must try to fit cases. Rather, they reflect a complex of considerations designed to soften the tensions inherent in a system that contemplates parallel judicial processes." *Pennzoil Co. v. Texaco, Inc.,* —— U.S. ——, 107 S.Ct. 1519, 1526 n. 9, 95 L.Ed.2d 1 (1987). This case presents a number of considerations that make abstention appropriate both under *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and under *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).[1]

"The basic principle of *Younger* abstention is that, absent extraordinary circumstances, a federal court should not interfere with pending state judicial proceedings." *Brunken v. Lance*, 807 F.2d 1325, 1330 (7th Cir.1986); *see Jacobson v. Village of Northbrook*, 824 F.2d 567, 569 (7th Cir.1987). *Younger* involved a request that the federal court enjoin a pending state criminal prosecution. However, the doctrine has been extended to apply to civil proceedings in which "important state interests" are involved, *Ohio Civil Rights Comm'n v. Dayton Christian Schools*, 477 U.S. 619, 106 S.Ct. 2718, 2723, 91 L.Ed.2d 512 (1986). This case concerns a vital state interest: the State of Illinois' enforcement procedure for the recovery of support payments.

The Supreme Court has shown great reluctance to interfere with child support and other family law matters that have traditionally been left in the province of the states. *See Hisquierdo v. Hisquierdo*, 439 U.S. 572, 581, 99 S.Ct. 802, 808, 59 L.Ed.2d 1 (1979) (State family law will be overridden by conflicting federal law only when Congress has positively required such a result by direct enactment, and when state law does major damage to a clear and substantial federal interest.); *United States v. Yazell*, 382 U.S. 341, 352, 86 S.Ct. 500, 507, 15 L.Ed.2d 404 (1966) (same); *In re Burrus*, 136 U.S. 586, 593–94, 10 S.Ct. 850, 852–53, 34 L.Ed. 500 (1890) ("The whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states and not to the laws of the United States."). Because the plaintiffs in this case ask us to enjoin pending state civil proceedings concerning this important state interest, and because the constitutional issues raised in this suit could have been raised in the state proceed-

---

1. Like the majority, I conclude that rules such as § 2283 and the exhaustion requirement which establish the appropriate relation between state and federal courts may be raised by a federal court on its own initiative under certain circumstances. *See Sequoia Books, Inc. v. McDonald*, 725 F.2d 1091, 1095 (7th Cir.1984) ("We ... think in fact that it would be imprudent[ ] for us to hold that a federal court has no

power in any circumstances to abstain on its own initiative on the basis of the *Younger* doctrine."); *Waldron v. McAtee*, 723 F.2d 1348, 1351 (7th Cir.1983) ("[T]he court has the power and in an appropriate case the duty to order abstention, if necessary for the first time at the appellate level, even though no party is asking for it.").

ings, *see Moore v. Sims,* 442 U.S. 415, 430, 99 S.Ct. 2371, 2380, 60 L.Ed.2d 994 (1979), *Younger* abstention is appropriate.

An important motivation for the Supreme Court's decision to abstain in *Younger* was the notion of comity: "that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways," *Younger,* 401 U.S. at 44, 91 S.Ct. at 750. In this case, as the majority points out, the state has expressed its desire that this litigation be heard in federal court by removing the suit. The state is entitled to waive the protections of comity. *See Brown v. Hotel and Restaurant Employees,* 468 U.S. 491, 500 n. 9, 104 S.Ct. 3179, 3184 n. 9, 82 L.Ed.2d 773 (1984); *Ohio Bureau of Employment Services v. Hodory,* 431 U.S. 471, 477–80, 97 S.Ct. 1898, 1902–04, 52 L.Ed.2d 513 (1977); *see also Ryan v. State Board of Elections,* 661 F.2d 1130, 1136 (7th Cir.1981) (rejecting *Younger* abstention because state removed the case). In my view, however, the state's removal of the claim in this case did not constitute such a waiver.

In *Dayton Christian Schools,* even though the state had stipulated to district court jurisdiction, the Court rejected the suggestion that, by doing so, the state had waived any abstention claim. *See Dayton Christian Schools,* 106 S.Ct. at 2722–23. This case is similar. Although the state has expressed its willingness to have the entire case heard in federal court, this position should not be read as an express directive that the federal court proceed with the federal claim now that the state-law issues—which may render any federal opinion advisory—have been remanded to state court. Rather, the state has taken no position on the issue of abstention in these changed circumstances.[2]

"The Supreme Court has not decided whether a state forfeits the protection of *Younger* by silence." *Moses v. County of Kenosha,* 826 F.2d 708 (7th Cir.1987). The Court's recent decision in *Granberry v. Greer,* —— U.S. ——, 107 S.Ct. 1671, 95 L.Ed.2d 119 (1987), however, is instructive. *Granberry* concerned the question of a state's waiver of the exhaustion requirement in habeas corpus cases, an issue of comity analogous to this one, *see generally McGee v. Estelle,* 722 F.2d 1206 (5th Cir.1984) (*en banc*). The *Granberry* Court made a distinction between a knowing and express waiver of the protections afforded by comity, and the simple failure to raise the issue, holding that in the latter case the federal court is "not obligated to regard the state's omission as an absolute waiver of the claim," *id.* 107 S.Ct. at 1674. Rather, the court is left with discretion to insist on complete exhaustion of state remedies or take the case. *Id.* Similarly, in this case the state's initial removal of the case did not obligate the district court to decide the federal claim. In my view, therefore, the fact that the state originally removed the case does not alter my conclusion that abstention under *Younger* was appropriate.[3]

Even if abstention under *Younger* were inappropriate, the district court should nevertheless have dismissed the case under the doctrine of *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), and *Moses H. Cone Memorial Hos-*

---

2. Even assuming that the state's action in this case constituted a waiver, it is unclear whether the district court was therefore required to entertain the suit. The *Hodory* Court did not indicate that the state's acquiesence to a federal forum precluded abstention. Rather, the Court held only that "*Younger* principles of equity and comity do not require this Court to refuse Ohio the immediate adjudication it seeks," *Hodory,* 431 U.S. at 480, 97 S.Ct. at 1904.

3. If *Younger* abstention is appropriate, federal court intervention is permitted only if: "(1) 'the state proceeding is motivated by a desire to harass or is conducted in bad faith, ...'; (2) there 'is an extraordinarily pressing need for immediate equitable relief, ...'; or (3) the 'challenged provision is flagrantly and patently violative of express constitutional prohibitions,' " *Jacobson v. Village of Northbrook,* 824 F.2d 567, 570 (7th Cir.1987) (citations omitted). None of these factors is present in this case.

*pital v. Mercury Construction,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). In *Colorado River,* the Supreme Court held that a federal court may properly dismiss a case because of parallel state-court litigation based on "considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation'." *Colorado River,* 424 U.S. at 817, 96 S.Ct. at 1246 (*quoting Kerotest Mfg. Co. v. C–O–Two Fire Equipment Co.,* 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952)). Although the Court declined to term this type of dismissal "abstention," we have referred to it as such, *see, e.g., Oliver v. Fort Wayne Education Ass'n,* 820 F.2d 913, 915 (7th Cir.1987). *Colorado River* abstention "does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction. The weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case." *Moses H. Cone,* 460 U.S. at 16, 103 S.Ct. at 937. These factors include "the inconvenience of the federal forum; the desirability of avoiding piecemeal litigation; and the order in which jurisdiction was obtained by the concurrent forums," *Colorado River,* 424 U.S. at 818, 96 S.Ct. at 1247 (citation omitted).

In this case, as in *Colorado River* itself, the desirability of avoiding piecemeal litigation is paramount. The state-law issues in this case, which may obviate a decision on the federal issue, are being decided in a concurrent state proceeding. Thus, there is a "substantial likelihood that the state litigation will dispose of all claims present in the federal case," *Lumen Construction, Inc. v. Brant Construction Co.,* 780 F.2d 691, 695 (7th Cir.1985). In addition, as the plaintiffs concede in their supplemental brief, most of the cases that have construed the sections of the AFDC statute at issue here have been state cases. Like the field of water rights involved in *Colorado River,* the field of welfare benefits is one "peculiarly appropriate for comprehensive treatment in the forums having the greatest experience and expertise, assisted by state administrative officers acting under the state courts," *Moses H. Cone,* 460

U.S. at 16, 103 S.Ct. at 937. Because "extensive rights governed by state law," *id.,* are present in this suit, abstention under *Colorado River* was proper.

In my view, the district court should have abstained from this case. I therefore join in the majority's decision to remand the entire matter to state court.